EDWIN C. LITTLE, AND OLIVER SCOVILL, APPELLANTS, *v.* LEVI W. HALL, ANTHONY GOULD, DAVID BANKS, WILLIAM GOULD, AND DAVID BANKS, JR.

18h 165
L.-ed 328
14f 731

On the 27th of December, 1847, George F. Comstock was appointed state reporter, under a statute of the State of New York, which office he held until the 27th of December, 1851.

During his term of office, viz : in 1850, he, in conjunction with the comptroller and secretary of the State, acting under the authority of a statute, made an agreement with certain persons, that for five years to come, they should have the publication of the decisions of the court of appeals and the exclusive benefit of the copyright.

At the expiration of Mr. Comstock's term, viz : on the 27th of December, 1851, he had in his possession sundry manuscript notes, and the decisions made at the ensuing January term, were also placed in his hands to be reported. Out of these materials he made a volume, and sold it upon his own private account.

Whatever remedy the first assignees may have had against Mr. Comstock individually, they are not to be considered as the legal owners of the manuscript, under the copyright act of congress, and are not entitled to an injunction to prevent the publication and sale of the volume.

THIS was an appeal from the circuit court of the United States, for the northern district of New York.

The case is stated in the opinion of the court.

It was argued by *Mr. Seward*, for the plaintiffs in error, and *Mr. Haven*, for the defendants.

*Mr. Seward* made the following points :—

1. Comstock, by accepting the office of state reporter, and acting under it, and by uniting with the secretary of state and comptroller in the contract with the appellants of April 20, 1850, must be deemed to have accepted the terms and conditions of the act of April 11, 1848, and of April 9, 1850. And those statutes operated, by reason of such acquiescence on his part, to vest in the State of New York, all the interest and right which he might have, as author, in any reports of decisions of the court of appeals, which should be prepared by him as reporter ; and the State became the absolute owner thereof.

2. By the contract made by the state reporter, the secretary of state, and the comptroller, on behalf of the State, with the appellants, the interest of the State in all matter constituting the reports to be made by Comstock, as reporter, was equitably

and legally vested in the appellants, for the purpose of being published exclusively by them during the term specified in the contract.

3. The appellants, by the operation of the contract, and of the laws of the State in pursuance of which it was made, became the legal assignees and proprietors of the manuscript matter prepared by Comstock as state reporter, under the ninth section of the law of congress of 1831, which right was exclusive of all others during the continuance of the contract. The exclusive copyright was the exclusive right to publish the manuscripts.

This proposition is a legal deduction from the two former propositions already established.

4. Volume 4 of Comstock's Reports, was covered by the contract, as to all the matter that it contained, and so was subject to the exclusive right of the appellants to the manuscript matter prepared by the reporter, and incorporated into the work.

The expiration of Comstock's term of office did not alter his liability in this respect. True, he could not be required to prepare the decisions for publication, and to furnish notes and references; but,

1. If he did not do this, he must hold the materials subject to the order of his successor, who must do the labor; or, if he did use them, and prepare them for publication with notes and references, then the materials and additional matter, being incorporated together, and so prepared according to the contract, must pass, under the contract, to the appellants.

Had Comstock died during his term of office, the trust and bailment would have remained attached to the materials in the hands of his executors. A trust would have resulted to the State a right of action, legal or equitable; to the appellants, when the purpose for which he received the materials failed to take effect. (2 Fonblanque, 118.)

It is wholly unimportant that Comstock might, either while in office, or after going out of office, have acquired similar materials by other means.

1st. As he would in that case have used similar materials, as the basis for labor to be performed for the appellants under the contract, and as he had received an equivalent in advance for that labor, either the labor must be done for their benefit or not at all.

2d. But in point of fact, he received these specified materials as a trustee and bailee, and he must be held to the obligations they created.

These are principles so familiar, and they so fully pervade every branch of jurisprudence, equally the law and equity, that references to authorities would seem superfluous. But for con-

Little et al. *v.* Hall et al.

venience, refer to Hill on Trustees, 172, 282, 509, 2 Vesey, 498 ; Taylor *v.* Plumer, 3 Maule & Selwyn, 562, 567, 574 ; Adair *v.* Shew, 1 Schoale & Lefroy, 262 ; Story on Equity Jurisprudence, § 533, &c., 1,257, 1,258, 1,261 ; Kane *v.* Bloodgood, 7 Johnson's Ch. Reports. 110, where it is held that every deposit is a trust, and that every person who receives money to be paid to another, or to be applied to a particular purpose to which he does not apply it, is a trustee. So the principle adopted in the case of a tenant, that he cannot deny the title of his landlord so long as he retains possession, but must surrender the premises, and place himself in hostility to his landlord, before he can set up a title in himself, is founded on the very contract of tenancy itself. (Nelson, Ch. J. ; Phelan and wife *v.* Kelly, 25 Wend. 392. See also Massey *v.* Davis, 2 Vesey, Jr., 318, 320 ; East India Co. *v.* Hinchman, 1 Vesey, Jr., 289.)

5. It is in evidence, that Mr. Comstock has commenced, and still has pending, an action to establish his right to the office of state reporter, at this time. This claim of continuance in office is utterly inconsistent with the position of individual and private right, action, and interest, in regard to volume 4, set up by the respondents, and is conclusive against him and them, that volume 4 was prepared by him as state reporter, and subject to the operation of the contract, Exhibit A.—(Lord Chancellor, in 2 Vesey, Jr., 696 ; 1 Swanston, Note (a) to p. 381 ; Comyn's Digest, Election, C. I.)

Comstock has made his election to claim and hold the office of state reporter, with full knowledge of his rights, and he is bound by it.

6. There is no proof of any acquiescence by the appellants in the claim of Mr. Comstock, by which he was misled or induced to incur expense.

*Mr. Haven*, for defendants in error, made the following points :—

1. There is no question of copyright or of property in manuscripts involved in the case, and the plaintiffs' claim does not fall within the provisions of any of the acts of congress, and this is fatal to the plaintiffs' case.

I. The laws of the United States afford remedies, and the federal courts have jurisdiction only in favor of the " author " of a book or " his legal assigns," or the " author or legal proprietor " of a manuscript. Of course, a book or manuscript belongs primarily under the copyright laws to the author. The plaintiffs not being the " author," must therefore deduce from him a " legal " right and title to the book or manuscript, or else they cannot sustain their bill in the federal courts. If they can allege

any other rights which have been violated, these must be asserted in the state courts, and on some general principle of equity or of law. See the opinion of the circuit court, which proceeds very much on this ground. See also laws of the United States, 2 sess. 21 Cong. 1831, p. 11, §§ 1, 9; 2 Kent, Comm. (6th ed.) 379. Clark *v.* Price, 2 Wilson, Ch. R. 157. Jollie *v.* Jaques, 1 Blatch. 618, 627.

II. But the strongest manner in which the plaintiffs can state their case is to allege that the notes, references, and manuscript matter composed by Mr. Comstock, and contained in the book in question, fall within the purview of their contract for the publication of the State Reports to be composed by the state reporter. We say the strongest, because this assumes the precise fact controverted, to wit, that Mr. Comstock's labors upon this book were official and not private. It is not pretended of course that the plaintiffs, under their contract with the state officers, could have any interest in the labors of Mr. C., or any one else as a private reporter.

III. Assuming then this, the best statement of the plaintiffs' case, to be true, it only follows that the contract with the plaintiffs has been violated, affording perhaps a just ground of action or claim against the State of New York, or its agents who made the contract. But it by no means follows that the plaintiffs have the "legal" title to, or are "the legal proprietors" of the book or of the manuscript in question. At the time of the contract, no part of the work was composed. The agreement, therefore, was simply executory, and could vest no title or actual property in that which had no existence.

2. But the case is not such as has been thus far assumed. In fact, Mr. Comstock was not in the service of the State. He was a private citizen, and another person held the office of state reporter, and received the salary annexed thereto. In fact, also, Mr. Comstock, at no period of his labors on this book, pretended to be acting for the State, or the plaintiffs. Being a private citizen, in fact, before he began, he distinctly announced that he should not prepare the work for the State or the plaintiffs, but should do it in his private character, and would sell it as his own property. After he began, he employed the stereotype printer on his private account. Still later, he invited proposals to buy the work as his own, and, among others, invited the plaintiffs; and finally he sold it as his own, thus maintaining from the beginning to the end an open consistency of conduct, a course of conduct at the time called in question by no one, not even the plaintiffs, who now seek to appropriate the result of his labors as their property.

3. What has been thus far said, it is believed, shows that the

plaintiffs, in the most favorable views which can be taken of their case, have no such title as will sustain their bill, nor indeed any title at all, whatever may be said of the defendants, their position, and that of their vendor, Mr. Comstock.   We shall now speak of them and of him, especially of his position and relations to the subject, placing the facts and circumstances of the case in the light in which we regard them, and demonstrating, if we can, that, upon every principle of law and justice, the copyright of the book in question is with the defendants.

4. The complainants are equitably estopped from claiming the relief asked for in their bill.

Mr. Justice McLEAN delivered the opinion of the court.

This is an appeal from the decree of the circuit court of the United States for the northern district of New York.

A want of jurisdiction to sustain this appeal was alleged by counsel, as it does not appear from the record that the amount in controversy exceeds the sum of two thousand dollars; but this objection was obviated by an affidavit, which stated that the amount claimed by the plaintiffs exceeds that sum.

This bill was filed under the copyright act, to enjoin the defendants from publishing and selling the fourth volume of Comstock's Reports.

The plaintiffs, who are publishers and booksellers at Albany, New York, represent that, on the 20th of April, 1850, they entered into an agreement with Washington Hunt, comptroller, Christopher Morgan, secretary, and George F. Comstock, reporter, of the State of New York, as required by statute, that they should have the publication, for the term of five years, of the decisions of the court of appeals, and the exclusive benefit of the copyright, to be taken out in behalf of the State, of the notes and references, and other matter furnished by the reporter, connected with said decisions; and that instrument was declared to be an assignment and transfer of the copyright of the matter so published, which should consist of volumes of not less than five hundred pages each.

On the 27th of December, 1847, George F. Comstock was appointed state reporter for three years, and until his successor was appointed and qualified, at a salary of $2,000 per annum. He was to have, under the law, no interest in the reports, but the copyright of his notes, references, and abstracts of arguments, was to be taken in the name of the secretary of state, for the benefit of the people of New York.   The law forbade the reporter and all other persons from acquiring a copyright in the reports, but declared they might be republished by any person.

Mr. Comstock's term of office expired on the 27th of Decem-

ber, 1850, and his successor, Henry R. Selden, Esq., was appointed to succeed him on the 17th of January, 1851. Mr. Comstock questioned the validity of his appointment, and the matter was referred to the judges of the court of appeals, then in session at Albany, who decided that Mr. Selden was duly appointed. He took the oath on the 21st of January, 1851, and immediately entered upon the duties of his office.

Mr. Comstock published three volumes of his reports; and having in his hands, at the expiration of his office, opinions of the court to make half or more of another volume, on the suggestion of the judges, and with the consent of Mr. Selden, the opinions of the January term were delivered to him, that he might complete his fourth volume. At the time of this arrangement, he had made no preparation, by notes, &c., for this volume, and did not commence the work until some months afterwards.

After he had made considerable advance in the preparation of this volume, he invited proposals for the purchase of the copyright; and although the plaintiffs, in conversation with him, said they would give as much as any other persons; yet they made no proposal, as they were apprehensive it might affect the contract for the publication of the reports, as above stated. The defendants purchased the copyright, for which they paid $2,500. At a large expense, they prepared stereotypes for the work, and printed it.

The plaintiffs, so soon as the volume was published, commenced a republication of it, and filed this bill to enjoin the defendants from selling their edition. Previous to the publication of the third volume of Comstock's Reports, the secretary of state had the copyright of the head-notes, references, &c., entered by the clerk of the district court of the United States, for the benefit of the State; and the complainants had a similar entry made, to secure the copyright to the State, of the fourth volume. This was not done by the secretary of state, as the law directed, and it seems it was not sanctioned by him, as he was doubtful whether he had the power to do so.

The 9th section of the copyright act of the 3d of February, 1831, provides " that any one who shall print or publish any manuscript whatever without the consent of the author or legal proprietor first obtained as aforesaid," " shall be liable to suffer and pay to the author or proprietor all damages occasioned by such injury," &c.

At common law, an author has a right to his unpublished manuscripts the same as to any other property he may possess; and this statute gives him a remedy by injunction to protect this right.

A formal transfer of a copyright by the supplementary act of the 30th of June, 1834, is required to be proved and recorded as deeds for the conveyance of land, and such record operates as notice.

After the expiration of his official term, Comstock did not and could not act as reporter. His successor, having been appointed and qualified, discharged the duties of the office and received the salary. As many of the opinions of the court were in the hands of Comstock when his office expired, it might have been made a question whether he could not publish the fourth volume as reporter. This would have given to the State a continuous report of the decisions of the court of appeals, as the law contemplated, with the copyright of the notes, &c., secured for the benefit of the people of the State. If the opinions of the court came into his hands during his continuance in office, there would seem to be no impropriety in his publishing them, as filling up the measure of his term.

But it seems a different view was taken by the late reporter. As his term of office had expired, he was unwilling to publish the fourth volume without compensation for his labor. This changed his relations with the plaintiffs, as that contract was made as reporter, and on the supposition that he would be continued in that office. Under that contract, the complainants had the advantage of publishing the reports for the price stipulated, but any one was at liberty to republish them.

The fourth volume was published by Mr. Comstock as an individual, he having secured to himself the copyright. This probably insured to the purchaser of the right the republication of the work for the term of twenty-eight years. Under the agreements made with the plaintiffs, they had only the profit of their contract.

Whether the plaintiffs may not have a remedy on their contract with Mr. Comstock in the local tribunals of the State, is not a question before us. Our only inquiry is, whether any relief can be given by this court under the copyright act. Where a case arises under that act, we have jurisdiction, though both the parties, as in this case, are citizens of the same State. But if the act do not give the remedy sought, we can only take jurisdiction on the ground that the controversy is between citizens of different States.

Were the plaintiffs the legal proprietors of the manuscript from which the fourth volume of Comstock's Reports was published? The plaintiffs rely upon their contract with the comptroller, the secretary of state, and Mr. Comstock, the reporter. In that contract it is said, " this instrument is declared to be an

assignment and transfer of the copyright of the matter so published to the parties of the second part."

This contract was made with Mr. Comstock as reporter, and the plaintiffs agreed to publish the work in volumes containing five hundred pages each, to have them well bound in calf, the types, paper, and the entire execution, to be equal to Denio's Reports; the work to be done under the superintendence of the reporter; copies to be furnished to certain officers of the State, and the publishers were to keep the volumes for sale at two dollars and fifty cents per copy; and in all things they were bound to comply with the statutes of the State.

Comstock could not have published the work as reporter without the consent of the court of appeals, and also the secretary of state, who was required to secure the copyright to the State; and for his labor in preparing the notes, references, &c., and superintending the printing, he could have received no compensation.

Without saying what effect might have been given to the contract had the relation of the parties remained unchanged, we are unable to say, as the case now stands before us, that the plaintiffs were the legal owners of the manuscript within the copyright law. The contract was made by Comstock as reporter, whose duties were regulated by law; and the obligations of the complainants as publishers were embodied in the contract, and were incompatible with any publication on private account.

The entire labor of the work was performed by Comstock, not as reporter, but on his own account. It is, we think, not a case for a specific execution of the contract; and, in effect, that is the object of the bill. This result has not been brought about by the acts of Comstock. He may have been imprudent in extending his contract unconditionally beyond the term of his office. But in doing so he has an apology, if not an excuse, by being associated in making the contract with two high functionaries of the State. Under the changed relation of the parties, the plaintiffs cannot be considered as the legal owners of the manuscript for the purposes of the contract under the copyright law.

Whatever obligation may arise from the contract under the circumstances as against Comstock must be founded on his failure to furnish the manuscripts to the plaintiffs, and of such a case we can take no jurisdiction as between the parties on the record.

The decree of the circuit court is affirmed.