### The "Mark Twain" Case.

### Clemens v. Belford, Clark & Co.

(*Circuit Court, N. D. Illinois.* January 8, 1883.)

1. AUTHORS AND WRITERS—RIGHT TO USE OF ASSUMED NAME.
   An author or writer has no better or higher right in a *nom de plume*, or assumed name, than he has in his baptismal name.

2. SAME—COPYRIGHT THE SOLE PROTECTION.
   A person becoming an author can secure to himself the exclusive right to his productions only by a copyright under the laws of the United States; and if he publishes anything without so protecting it, it becomes public property, and any person may republish it, and state the name of the author in such form in the book as he may choose, either upon the title-page or otherwise, as to show who was the author.

3. SAME—PROTECTION OF UNPUBLISHED WORKS.
   An author has the right to restrain the publication of any of his literary work which he has never published or dedicated to the public.

4. SAME—FALSE IMPUTATION OF AUTHORSHIP.
   An author may restrain the publication of literary matter purporting to have been written by him, but which in fact he never did write; and this rule applies in favor of persons known to the public under an assumed name.

5. SAME—TRADE NAME OR TRADE MARK—NOT A SUBSTITUTE FOR COPYRIGHT.
   An author cannot acquire a right to the protection of his writings under an assumed name as a trade name or trade mark, and no pseudonym, however ingenuous, novel, or quaint, can give one any more rights than he would have under his own name, or defeat the policy of the law that the publication of literary matter without protection by copyright has dedicated such matter to the public.

*Thos. W. Clark*, for complainant.
*Hutchinson & Partridge*, for defendant.

BLODGETT, D. J.   The bill in this case states that complainant has, for about 20 years last past, been an author and writer by profession ; that he has been in the habit for said time of publishing articles, sketches, books, and other literary matter, composed by him for publication under the name, assumed by him to designate himself as the author and writer of such sketches, articles, books, and other literary matter, of "Mark Twain ;" that the said designation of "Mark Twain" has been used by him during the last 20 years as his *nom de plume* or trade-mark as an author; that his said writings, under the designation of "Mark Twain," have acquired great popularity, and met with a ready and continuous sale, and that no other person has been licensed or permitted by him to use said designation of "Mark Twain" as a *nom de plume* or designation of authorship; that the exclusive right of selecting for publication and of publishing in any collective form the sketches, articles, or other writings written and originally published by him under the said name of "Mark Twain," so as to make a book or collection of durable form for publication, by right ought to belong exclusively to him, and is of great value to him in his reputation, and a great security to the public as purchasers of the works purporting to have been written by complainant ; that the said defendants have made, printed, put out, and sold, in great quantities, a certain book—called upon its title-page "Sketches by Mark Twain, now first published in complete form.   Belford & Co.   1880"—containing about 369 pages, many or most of which, in one form or another, are substantially like sketches published prior to the year 1880 by complainant; and that said Belford, Clark & Co. had no authority, leave, or license from complainant, or derived from him, to make publication of the said book or any part thereof; that the defendants in their said book, so published by them, placed upon the page next succeeding the leaf whereon the title-page is printed, a preface in these words:

"I have scattered through this volume a mass of matter which has never been in print before, (such as ' Learned Fables for Good Old Boys and Girls,' the ' Jumping Frog Restored to the English Tongue after Martyrdom in the French,' the ' Membraneous Croup' sketch, and many others which I need not specify;) not doing this in order to make an advertisement of it, but because these things seemed instructive.                    MARK TWAIN."

—That complainant never gave any authority, leave, or license to the defendants to print or publish any such preface, or any of the representations therein contained, or substantially the same; that complainant has, by the said wrongful acts of the defendants, been greatly

injured, and his property in the said *nom de plume* or trade-mark of "Mark Twain" as a commercial designation of authorship has been deteriorated and lessened in value; wherefore he prays damages and profits, and a writ of injunction restraining the further publication of said work, and that the plates of such book may be damasked and destroyed.

To this bill defendants have filed a special and general demurrer.

The position assumed by the complainant in this bill is that he has the exclusive right to the use of the *nom de plume* or trade-mark of "Mark Twain," assumed by him, and that defendants can be enjoined by a court of equity from using such name without the complainant's consent or license.

It does not seem to me that an author or writer has or can acquire any better or higher right in a *nom de plume* or assumed name than he has in his Christian or baptismal name. When a person enters the field of authorship he can secure to himself the exclusive right to his writings by a copyright under the laws of the United States. If he publishes anything of which he is the author or compiler, either under his own proper name or an assumed name, without protecting it by copyright, it becomes public property, and any person who chooses to do so has the right to republish it, and to state the name of the author in such form in the book, either upon the title page or otherwise, as to show who was the writer or author thereof. "In this country an author has no exclusive property in his published works except when he has secured and protected it by compliance with the copyright laws of the United States." *Wheaton* v. *Peters*, 8 Pet. 591; *Clayton* v. *Stowe*, 2 Paine, 382; *Bartlett* v. *Crittenden*, 5 McLean, 32; *Pulte* v. *Derby*, Id. 328. "If an author would secure to himself the sole right of printing, publishing, and selling his literary compositions, he must do so under the copyright laws." *Stowe* v. *Thomas*, 2 Wall. Jr. 547.

The seventh paragraph of the bill charges that many or most of the sketches contained in the book complained of, "in one form or another, are substantially like sketches published prior to the year 1880 by your orator;" but it does not aver that they are or ever were protected by copyright, and by implication concedes their publication without copyright. If they were published without such protection they become public property, and may be republished by any one who chooses to do so.

Undoubtedly an author has the right to restrain the publication of any of his literary work which he has never published or given to the

public. *Little* v. *Hall*, 18 How. 165; *Keene* v. *Wheatly*, 9 Amer. Law. Reg. 33; *Bartlett* v. *Crittenden*, 5 McLean, 32. So, too, an author of acquired reputation, and, perhaps, a person who has not obtained any standing before the public as a writer, may restrain another from the publication of literary matter purporting to have been written by him, but which, in fact, was never so written. In other words, no person has the right to hold another out to the world as the author of literary matter which he never wrote; and the same rule would undoubtedly apply in favor of a person known to the public under a *nom de plume*, because no one has the right, either expressly or by implication, falsely or untruly to charge another with the composition or authorship of a literary production which he did not write. Any other rule would permit writers of inferior merit to put their compositions before the public under the names of writers of high standing and authority, thereby perpetrating a fraud not only on the writer whose name is used, but also on the public.

The complainant, however, does not charge in this bill that the book in question, either by the title, preface, or any other matter contained in it, attributes to him the authorship of anything which he in fact did not write.

The bill rests, then, upon the single proposition, is the complainant entitled to invoke the aid of this court to prevent the defendants from using the complainant's assumed name of "Mark Twain" in connection with the publication of sketches and writings which complainant has heretofore published under that name, and which have not been copyrighted by him? That he could not have done this if these sketches had been published under complainant's proper name is clear from the authorities I have cited, but the complainant seems to assume that he has acquired a right to the protection of his writings under his assumed name as a trade name or trade mark.

This is the first attempt which has ever come under my notice to protect a writer's exclusive right to literary property under the law applicable to trade-marks. Literary property is the right which the author or publisher of a literary work has to prevent its multiplication by copies or duplication, and is from its very nature an incorporeal right. William Cobbett could have no greater right to protect a literary production which he gave to the world under the fictitious name of "Peter Porcupine" than that which was published under his own proper name. The invention of a *nom de plume* gives the writer no increase of right over another who uses his own name. Trade-marks are the means by which the manufacturers of vendible merchandise

designate or state to the public the quality of such goods, and the fact that they are the manufacturers of them; and one person may have several trade-marks, designating different kinds of goods or different qualities of the same kind; but an author cannot, by the adoption of a *nom de plume*, be allowed to defeat the well-settled rules of the common law in force in this country, that the "publication of a literary work without copyright is a dedication to the public, after which any one may republish it." No pseudonym, however ingenious, novel, or quaint, can give an author any more rights than he would have under his own name. The policy of the law in this country has been settled too long to be now considered doubtful, that the publication of literary matter without protection by copyright has dedicated such matter to the public, and the public are entitled to use it in such form as they may thereafter choose, and to quote, compile, or publish it as the writing of its author. That is, any person who chooses to do so, can republish any uncopyrighted literary production, and give the name of the author, either upon the title-page, or otherwise as best suits the interest or taste of the person so republishing.

Complainant does not say by his bill that the preface to the book in question was not written by him, and that by the publication of this preface, in connection with the sketches, defendants have attributed to him the authorship of something which he never wrote. If he had so charged perhaps he would have made a case entitling him to some relief.

The demurrer is sustained.