DMITRY SHOSTAKOVICH et al., Plaintiffs, *v.* TWENTIETH CENTURY-FOX FILM CORPORATION, Defendant.

Supreme Court, Special Term, New York County, June 7, 1948.

*Charles Recht* for plaintiffs.

*Edwin P. Kilroe* for defendant.

KOCH, J. Plaintiffs are composers of international renown. They are citizens and residents of the Union of Soviet Socialist Republics. Defendant, a domestic corporation, has produced a picture known as " The Iron Curtain " which is now being exhibited in theatres throughout this country. In the public mind, this title has come to indicate the boundary between that part of Europe which is under the sovereignty of, occupied by or under the influence of the Union of Soviet Socialist Republics, as distinguished from the rest of the continent. The picture depicts recent disclosures of espionage in Canada attributed to representatives of the Union of Soviet Socialist Republics. There is shown, preliminarily, but not as part of the picture proper, as is customary in the showing of motion pictures, the names of the players, the producer, the cameramen, and similar informative data. Included is this statement: " Music — From The Selected Works of the Soviet Composers — Dmitry Shostakovich, Serge Prokofieff, Aram Khachaturian, Nicholai Miaskovsky — Conducted by Alfred Newman ". Such practice in the theatrical, advertising and kindred businesses is known as giving a " credit line ". During the picture, music of the several plaintiffs is reproduced, from time to time, for a total period of approximately forty-five minutes. The entire running time of the film is eighty-seven minutes. The use of the music can best be described as incidental, background matter. Aside from the use of their music neither the plot nor the theme of the play, in any manner, concerns plaintiffs. In addition to the use of their names on the " credit lines " the name of one plaintiff is used when one of the characters in the play is shown placing a recording of this particular plaintiff's music on a phonograph. Again this is incidental, the name is mentioned in an appreciative, familiar fashion, the impression given being that the character has come upon a record of a composition which he recognizes and appreciates hearing. All the music, it is conceded, for the purposes of this motion, is in the public domain and enjoys no copyright protection whatever.

Plaintiffs seek to enjoin *pendente lite* and permanently the use of their names and music in the picture and in any advertising or publicity matter relating to it. Only one cause of action is set forth in the complaint. Primarily, libel and violation of the Civil Rights Law are charged. It may also be that the allegations can be construed to spell out causes for (a) the

deliberate infliction of an injury without just cause and (b) a violation of plaintiffs' moral rights as composers. In addition to the injunctive relief a money judgment is asked.

On this motion plaintiffs base their rights to relief on these grounds: (1) the provision for injunctive relief contained in section 51 of the Civil Rights Law; (2) the injunctive power of this court to restrain publication of defamatory matter (*Koussevitzky* v. *Allen, Towne & Heath,* 272 App. Div. 759); (3) the deliberate infliction of an injury without just cause (*Advance Music Corp* v. *American Tobacco Co.,* 296 N. Y. 79), and (4) the violation of plaintiffs' moral rights as composers (The Doctrine of Moral Right, 53 Harv. L. Rev. 554).

The application must be denied insofar as relief is sought under section 51 of the Civil Rights Law. In *Jaccard* v. *Macy & Co.* (265 App. Div. 15), it was held that the use of a designer's name in advertising the sale of a dress copied without her consent from her original, uncopyrighted design was not an invasion of the right of privacy protected by sections 50 and 51 of the Civil Rights Law. While the analogy between a dress design and plaintiffs' music might be considered unfortunate by some, the legal principle is the same. Plaintiffs' compositions are similarily unprotected and the use of their names in conjunction therewith is, therefore, not subject to restraint under the Civil Rights Law. The lack of copyright protection has long been held to permit others to use the names of authors in copying, publishing or compiling their works. (*Clemens* v. *Belford, Clark & Co.,* 14 F. 728.)

Passing to the right to injunctive relief restraining the publication of alleged libelous matter, it is first noted that under the ancient doctrine of this State there was no right to enjoin the publication of defamatory matter. (*Koussevitzky* v. *Allen, Towne & Heath,* 188 Misc. 479, *supra.*) In affirming the denial of injunctive relief in that case however, the Appellate Division in this department said, in a *Per Curiam* opinion (272 App. Div. 59, *supra*): '' Our affirmance * * * should not be construed as a determination by this court that injunctive relief may not be had to restrain the publication of defamatory statements in a proper case.'' Two questions are, therefore, presented for consideration: (1) have plaintiffs been libeled; (2) if so, is this a proper case in which to grant injunctive relief. The gravamen of plaintiffs' charge is that by the portrayal of the espionage activities of the representatives of the Union of Soviet Socialist Republics in Canada and by the depicted disowning of

these activities by one of these representatives a picture with an anti-Soviet theme has been published. The use of plaintiffs' music in such a picture, it is argued, indicates their " approval ", " endorsement " and " participation " therein thereby casting upon them " the false imputation of being disloyal to their country ". The court in the presence of and with the consent of counsel for both sides has seen the picture. There is no ground for any contention that plaintiffs have participated in its production or given their approval or indorsement thereto. It is urged that the use of plaintiffs' names and music "necessarily implies " their consent, approval or collaboration in the production and distribution of the picture because " the public at large knows that living composers receive payment for the use of their names and creations in films ". The error in this reasoning is in the *necessary implication*. No such implication exists, necessarily or otherwise, where the work of the composer is in the public domain and may be freely published, copied or compiled by others (*Jaccard* v. *Macy & Co., supra; Clemens* v. *Belford, Clark & Co., supra*). In the absence of such implication the existence of libel is not shown and the drastic relief asked cannot be granted. Such is likewise the ruling if plaintiffs' contention is that they are being used, unwillingly, as a means to disseminate libelous matter. In such a case the prerequisite of exercising the injunctive power would again be a clear showing of the existence of libel.

The third and fourth grounds will be considered together. There is no longer any doubt that the deliberate infliction of a willful injury without just cause is actionable (*Advance Music Corp.* v. *American Tobacco Co., supra*). The wrong which is alleged here is the use of plaintiffs' music in a moving picture whose theme is objectionable to them in that it is unsympathetic to their political ideology. The logical development of this theory leads inescapably to the Doctrine of Moral Right (53 Harv. L. Rev. 554). There is no charge of distortion of the compositions nor any claim that they have not been faithfully reproduced. Conceivably, under the doctrine of moral right the court could in a proper case, prevent the use of a composition or work, in the public domain, in such a manner as would be violative of the author's rights. The application of the doctrine presents much difficulty however. With reference to that which is in the public domain there arises a conflict between the moral right and the well-established rights of others to use such works (*Clemens* v. *Belford, Clark & Co., supra*). So, too,

there arises the question of the norm by which the use of such work is to be tested to determine whether or not the author's moral right as an author has been violated. Is the standard to be good taste, artistic worth, political beliefs, moral concepts or what is it to be? In the present state of our law the very existence of the right is not clear, the relative position of the rights thereunder with reference to the rights of others is not defined nor has the nature of the proper remedy been determined. Quite obviously therefore, in the absence of any clear showing of the infliction of a willful injury or of any invasion of a moral right, this court should not consider granting the drastic relief asked on either theory. The motion is accordingly denied in all respects.