# KAPIOLANI ESTATE, LIMITED, *v.* ATCHERLEY.

## APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF HAWAII.

No. 174.   Argued April 30, 1915.—Decided June 14, 1915.

A decree was made in 1855, by the Hawaiian court having jurisdiction, to the effect that one who was guardian of a minor had wrongfully obtained from the Land Commission registration in his own name of property belonging to the minor, and that he, and his heirs claiming the property after his decease, held the property as trustee for the ward, and should convey the same to him; the decree was acquiesced in so far as possession was concerned, but no deed was ever executed, and subsequently those holding under the heirs of the guardian having commenced an ejectment suit relying on the legal title, the grantee of the ward brought this suit to enjoin prosecution of the ejectment suit; meanwhile in a suit between a grantee of the ward and others claiming under the heirs of the guardian, it was held that a title registered by the Land Commission could not be attacked; the record in that suit, however, did not disclose the relations of the guardian and the ward; this court having affirmed that judgment, the Hawaiian courts in this case, while admitting that they had fallen into error in the former decision by reason of not giving full effect to the guardianship relations, followed it because it had been affirmed by this court.  *Held* that:

In *Lewers & Cooke* v. *Atcherley*, 222 U. S. 285, the suggestion that the relation of guardian and ward existed had no substantial foundation on the record, and this court followed the decision of the local court; the relationship of guardian and ward having now been cleared up and the record in this case showing that it did exist, the courts of Hawaii should have given full effect to that fact, notwithstanding the affirmance by this court of the prior and contrary decision of the Hawaiian court when it did not appear, and so the judgment is reversed and the case sent back to the Hawaiian court.

Under the law of the Hawaiian Islands as far back as 1846, a guardian could not, through the instrumentality of an award of the Land Commission, obtain a title to the property of his ward which

would be so immune from subsequent attack that the wrong would be without redress.

There is nothing to hinder a court from changing its action on a different view of law, after an interlocutory decree or to hinder a party to the action from availing itself of such change unless the decision has the finality of *res judicata.*

A corporation, grantee of a portion of the grantor's property, is not a privy to a grantee of another portion, and a judgment against the latter in a suit in which the corporation was not a party, although some of its officers as individuals had notice thereof and took some part in the defense, is not *res judicata* if the acts of such officers were, as in this case, merely individual and not authorized by the corporation.

In order to make a judgment against the grantor available to the grantee of the title his covenantor must receive notice of the suit and have an opportunity to defend.

21 Hawaii, 441, reversed.

THE facts, which involve the title to land in Hawaii, are stated in the opinion.

*Mr. David L. Withington,* with whom *Mr. William R. Castle, Mr. W. A. Greenwell* and *Mr. Alfred L. Castle* were on the brief, for appellant:

The judgment of 1858 was right and should be enforced. "A minor on coming of age can obtain relief in equity against a guardian who in fraud of his ward, presents a claim and obtains in his own name an award of title to the minor's land."

The exact point was raised and decided in the equity action in 1858, it was necessarily involved in the probate proceeding in that year, the decision of the Supreme Court of Hawaii on demurrer in 1903 declined to review it, and it is sustained by the present decision.

The equity suit before Chief Justice Allen did not seek to set aside the land commission award, but to obtain its fruits. The jurisdiction had been expressly granted to the Supreme Court by statute before 1858.

The court, before 1858, had declared its jurisdiction in plain terms, and has since consistently maintained such construction of its jurisdiction.

This is in accord with the decisions of this court.

The acts in regard to Mexican land grants in California provided for a decree and patent of similar conclusive effect to a land commission award in Hawaii, and this court has repeatedly held that trust relations are not affected.

The decree in 1858 is based on the ownership of the property by Kalakaua, a minor; that Kinimaka was his guardian, owing him the duty to present the land for award to the land commission; the presentation and obtaining the award to himself; the minor's coming of age, and the obligation of the guardian to account. In other words, it was an equitable action by a minor against his guardian for an accounting upon coming of age.

Kalakaua was the undoubted owner of the property.

Kinimaka was the guardian of Kalakaua and as such had absolute control and management of the ward's property, with the power of disposition.

It was his duty to present the land to the Land Commission for award and his failure to do so forfeited Kalakaua's right.

A guardian is not allowed to set up title against his ward.

The guardian is under an equitable obligation to account.

The ward, in the accounting, can elect to take the property.

The right of the ward is a contractual or *quasi*-contractual right against the guardian, which rights are not affected by a land commission award.

This court should reverse the judgment in accordance with familiar rules of equity and should follow the law of the case decided by the Supreme Court of Hawaii when it was the court of last resort.

This is a matter of local law and custom, in which this court should follow the local courts, which have in this action three times ruled the law with appellant.

The court of the time when these local laws and customs were in force twice so decided between litigants, to whom the parties in this action are privies.

This court should not interfere with the exercise of discretion by the Supreme Court of Hawaii in refusing to open up the decree of 1858 in aid of a speculator, claiming title under a breach of trust by a wrongdoer, where this would result in mischief to innocent parties and is not essential to the equities of the case.

The minor never had his day in court until the actions in 1858.

The Hawaiian court erred in holding that the decision of this court in the *Lewers & Cooke Case* was binding although erroneous. But, if binding, it should be overruled.

Numerous authorities of this and other courts are cited in support of these contentions.

*Mr. Lyle A. Dickey,* with whom *Mr. E. M. Satson* and *Mrs. Mary H. Atcherly* were on the brief, *pro se:*

The Supreme Court of Hawaii did not err in holding that it must follow a United States Supreme Court decision, though that decision upholds a decision of the lower court on a matter of local law.

There are no facts in this case which give appellant a greater equity than was possessed by its grantee in the former case.

The argument that guardianship was claimed and proved in the ancient equity case and that the resultant fiduciary relationship between Kinimaka and Kalakaua gave a court of equity in 1858 authority to re-investigate the question as to what person had a right to the award and to order the guardian of the holders of the allodial title created by the award to convey it to Kalakaua was

presented both to the Supreme Court of Hawaii and this court in the *Lewers & Cooke Case.*

The rule of the "law of the case" is not involved here.

The court below was also right in following the *Lewers & Cooke Case* because of the peculiar relation of appellant to that case which makes that case binding on appellant because of appellant's laches, present lack of interest in the case and *res judicata.*

The status of the *Lewers & Cooke Case* is that of a prior case because judgment was first reached in it.

Appellant is barred by laches from any standing in equity, and having sold all equitable title in the land to Lewers & Cooke, has no equitable interest in the subject-matter to sustain this suit.

The Lewers & Cooke decree should be followed in this case because it is *res judicata.*

The original tenure of Hawaii from the time Kamehameha first established the monarchy to 1839 was feudal and a despotism. The king and each overlord under him had absolute ownership and control of the land and people under him.

The constitution of 1839 and laws down to establishment of the Board of Commissioners to Quiet Land Titles in 1845 gave protection to interests in land, but those interests were still feudal, largely undefined, and the remedy for wrongful dispossession of an heir was payment of damages, not return of the land.

The awards of the Board of Commissioners to Quiet Land Titles created fee simple titles for the first time; did away with feudal tenure and settled forever all claims to land arising prior to December 10, 1845.

In the case of 1858 no fraud, actual or constructive, was pleaded or proved.

The entire record negatives either actual fraud by Kinimaka or any constructive fraud arising out of fiduciary relations.

Equity had no jurisdiction because Kalakaua had an adequate remedy at law.

Moses Kapaakea Kinimaka was not a party to the equity case of 1858 and no estoppel of record results from it against appellees.

The case of *Kalakaua* v. *Kinimaka* is a distinct case from that of *Kalakaua* v. *Pai and Armstrong, guardian,* so no claim can rightly be made that the minors were before the court as privies of Kinimaka.

Numerous authorities of this and other courts are cited in support of these contentions.

MR. JUSTICE MCKENNA delivered the opinion of the court.

Appeal to review a decree of the Supreme Court of Hawaii which reversed a decree of the circuit judge of the first judicial circuit enjoining the prosecution of an action of ejectment brought by Mary H. Atcherley, one of the appellees, against appellant for the recovery of certain described lands, decreeing that appellant had the equitable title to the lands and that appellees, including Dickey and Watson, who were made parties pending the suit, held the naked legal title thereto as tenants in common, one-half thereof by Mary H. Atcherley and one-quarter thereof by each of the other appellees, as trustees of appellant. The decree required that the appellees execute a conveyance of such title to appellant.

The bill alleges that one David Kalakaua, under and through whom the appellant company (designated hereinafter as complainant) claims, on or about December 29, 1856, litigated his title with the following parties, under whom defendant Atcherley claims title, to-wit: Kinimaka, Pai, his wife, and their children, in the Supreme Court of the Hawaiian Islands, in equity, alleging that Kinimaka held title to the lands in trust and as guardian

of Kalakaua and not otherwise, and praying that he, Kinimaka, be declared trustee of the lands for Kalakaua and be decreed to convey the same in fee to Kalakaua; that summons was duly issued and served on Kinimaka, who, before filing answer died, leaving a will devising the lands to his children, whom he left surviving him, and his widow, Pai; that these facts were suggested to the court and it was prayed that the widow and children be made parties to the suit, and a guardian *ad litem* be appointed for the children, it being alleged that they became trustees of the property in the same manner and under the same trust as Kinimaka.

That subsequently (March 8, 1858) Kalakaua filed a petition for administration upon the estate of one Kaniu, deceased, under whom he claimed title to the lands, and for the appointment of a guardian *ad litem* for the minor children of Kinimaka. That upon the filing of such petition George E. Beckwith, administrator of the estate of Kinimaka, was appointed guardian *ad litem* of the minor children of Kinimaka, and notice was served on him as such administrator and guardian and upon Pai to show cause why letters of administration might not issue to Kalakaua upon the estate of Kaniu, deceased.

That upon proceedings being had a decree was rendered adjudging Kalakaua to be the devisee of Kaniu and directing letters to be issued to him.

That on June 19, 1858, Kalakaua filed a further petition alleging the same facts substantially which he had alleged in the petitions of December 29, 1856, and March 16, 1857, with the additional fact that one Richard Armstrong had been appointed guardian of the minor children of Kinimaka, and prayed that he might be ordered to convey the lands to Kalakaua; and that a summons was duly served upon Armstrong as guardian of the children and upon Pai; that Armstrong and Pai subsequently answered; that evidence was taken, the case heard upon

the merits, and on November 2, 1858, the court duly entered the following decree:

"David Kalakaua against Richard Armstrong, guardian of Kaniu, David Leleo, and Kinimaka, minor children of Kinimaka, deceased. The court did order, adjudge and decree in this matter that Mr. Armstrong, as guardian of Kaniu, David Leleo, and Kinimaka, minor children of Kinimaka, deceased, do convey to David Kalakaua, the plaintiff in this cause, the land named Omulimalo, on the island of Molokai, and the first Apana of land set forth in Royal Patent 1602 filed in this cause."

That it did not appear either from the records of the court or from the registry of deeds in Honolulu that the decree of the court was in fact obeyed but, it is alleged, that after the decree Kalakaua "ceased to be molested in any way by either the widow and heirs aforesaid of said Kinimaka, or by the said Armstrong in their behalf, and retained open, notorious and undisputed possession and dealt with the said land in all ways as his own, and continued to do so until he disposed of said property."

The bill here made "all papers, pleadings and exhibits of whatsoever kind in said equity proceedings" a part of it and asked leave to refer to them as if actually incorporated therein. Then came the following: "And, in this connection, the complainant attaches hereto a copy of the original Land Commission award and royal patent [they were not previously referred to in the bill], and copies of the original record of evidence given before the Land Commission in support of said Land Commission award and royal patent, the same being referred to and made a part of the evidence in said equity proceedings instituted in the years 1856 and 1857 above referred to, which said copies are made a part of this bill."

That the successors in title of Kalakaua (the conveyances being set out) had retained and had been in the same kind of possession and exercised the same disposition

as he. That such possession in Kalakaua and his successors was known to the children of Kinimaka; that they attained their majority respectively in 1867, 1871 and 1877 and at no time did they or any of them assert any claim to the land or deny the rights of Kalakaua or his successors but acquiesced in his and their possession.

The manner by which defendants obtained the title they assert was set out and it was alleged that owing to the failure of Armstrong to obey the decree of the court and convey the interest of the children of Kinimaka as ordered by the court, complainant's required chain of title was incomplete and that the action in ejectment of Mary H. Atcherley, one of the defendants, sought "to take unconscionable advantage of the above-mentioned technical error in the chain of title." A cloud upon the title of complainant was asserted hence to follow and that it would be inequitable to permit her to prosecute her action of ejectment and that as naked trustee of the title she should be required to convey it to appellant.

An injunction, temporary and permanent, was prayed and that Mary H. Atcherley, the defendant, be declared trustee and be required to convey the property to complainant.

Copies of the proceedings referred to in the bill were annexed to it as exhibits. Among these, we have seen, were the award of the Land Commission and the royal title. The latter recites that—

"Whereas the Board of Commissioners to Quiet Land Titles has awarded to Kinimaka by award No. 129 a freehold estate less than allodial in the premises mentioned below, and,

"Whereas, Kinimaka has paid into the government treasury eighty-two and 50/100 Dollars for the government's rights in said land,

"Therefore, by this Royal Patent Kamehameha III . . . shows . . . that he has conveyed and

granted in fee simple to Kinimaka that land at Hono-
lulu on the Island of Oahu with these boundaries  .  .  .
It is granted in fee simple to him, his heirs and dev-
isees.  .  .  ."

The lands in suit were part of the lands conveyed.

Mary H. Atcherley, then being sole defendant, demurred
to the bill on the ground that it did not set out a cause of
action.

By stipulation of the parties, in order to determine the
question whether the decree of 1858 was *res adjudicata,*
the circuit judge made a *pro forma* ruling sustaining the
demurrer to the bill and dismissing it.

The complainant appealed to the Supreme Court of
the Territory, it being stipulated that complainant should
do so.

The Supreme Court reversed the decree.  14 Hawaii,
651.  In its opinion it recited the facts with great fullness,
completed the allegations of the bill by the exhibits at-
tached, and then disposed of the contentions as follows:

1. The decree adjudging Kalakaua to be the owner of
the land and requiring conveyance of it to be made to
him by Armstrong as guardian of the children of Kinimaka
was not ambiguous, but it took certainty from the aver-
ments of the bill and the record and there could "be no
doubt that it was the intention of the court to order the
conveyance of the interests of the minors."

2. The minors were bound by the decree notwithstand-
ing "they were not named as parties defendant in the
suit."  This was decided on the authority of Hawaiian
cases and the power of guardians over the estates of their
wards established by them and upon the general principle
of collateral attacks upon judgments.  And specifically
replying to the contention that the decree was not bind-
ing because of "the lack of service and upon the merits"
and that the court should refuse to enforce the decree,
it was said:

"It is not contended that the court must in all such cases reëxamine the former proceedings but merely that it may, in its discretion, do so. Assuming that to be so, we decline to retry the old case. The guardian appeared and contested the complainant's claim, presenting in opposition substantially the same views now sought to be urged by the respondent. The ward's interest were not permitted to go by default but were fully defended by counsel. The decree, while not carried out by the execution of a conveyance, was in fact acquiesced in, as appears by the bill, by all concerned and complainant and his successors in interest from that time continuously until about January, 1900, held open, notorious and undisturbed possession of the land. Under the circumstances, and after a lapse of more than forty years, we do not think that the court should examine into the merits of the former proceedings or refuse to enforce the decree for the reasons suggested."

Upon the filing of the mandate of the Supreme Court in the court below Mary H. Atcherley filed an answer in which she admitted many of the allegations of the bill, denied some—among others, the undisturbed possession of the land in Kalakaua and his successors, as alleged, and the inferences from it—asserted the validity of her title, and the staleness of complainant's demand, it having been "brought forty-three years or more than four times the term of the statute of limitations since the alleged date of the alleged decree ordering Richard Armstrong to give a conveyance." That to enforce a conveyance from her without giving her an opportunity to be heard upon the matters set forth in the bill would deprive her of property without due process of law, contrary to the Fourteenth Amendment to the Constitution of the United States.

By a supplemental answer she alleged the following, which we state narratively:

Since the filing of the answer the complainant Kapiolani

Estate, Limited, has parted with all of its estate in the land by a deed of a small portion to certain named parties and the balance, with covenants of warranty, to Lewers and Cooke, Limited, a Hawaiian corporation.

June 29, 1906, that corporation brought suit in the Court of Land Registration to register its title to the land conveyed. September 16, 1907, it was decreed that the corporation had a good title which was entitled to registration. The decree was reversed by the Supreme Court of the Territory March 5, 1908, that court holding that the corporation had no title, legal or equitable, to the land. 18 Hawaii, 625. The case was remitted to the Court of Land Registration for further proceedings and that court dismissed the petition of the corporation. The latter appealed from the decision to the Supreme Court of the Territory, which court modified the decree and on March 24, 1909, entered a final decree that the corporation had no title, legal or equitable, to the land. 19 Hawaii, 334. Upon appeal to this court the decision was affirmed. [*Lewers & Cooke, Ltd.*, v. *Atcherley*, 222 U. S. 285.]

The decree of the Supreme Court of Hawaii is in full force and effect and it is alleged that the "proceedings in the Court of Land Registration, Supreme Court of Hawaii and Supreme Court of the United States were upon the merits of the case and the cause of action so finally adjudicated was the same right and cause of action as that on which complainant in this case has founded its bill."

There was a replication to the answer and an amendment to the amended bill, and it appears that Mary H. Atcherley conveyed an undivided half of the property to Lyle A. Dickey and Edward M. Watson, two of the defendants. They were made parties by consent and answered in the case, in effect repeating the answers of their grantor.

It was decreed that (1) the allegations of the bill and replication of complainant were true. (2) The defendants

and each of them were estopped from litigating against or in opposition to the claim of complainant. (3) The defendants held the legal title to the land as tenants in common, one-half by Mary Atcherley and one-fourth by each of the other defendants. (4) Such title and titles were held by the defendants respectively as trustees for complainant and that each of them should be decreed to execute conveyance thereof to complainant, all and singular, the matters appertaining to the title having theretofore been litigated between the predecessors in title of the complainant and defendants respectively, and that the same were *res judicata*. (5) Defendants should be permanently enjoined from further prosecuting that certain action in ejectment then pending on the law side of the court, wherein Mary H. Atcherley was plaintiff and complainant was defendant.

A conveyance was decreed to be made accordingly and in case of default after thirty days the clerk of the court as its commissioner should make such deed. Further prosecution of the action in ejectment was enjoined.

The decree was reversed by the Supreme Court of the Territory.

The opinion is somewhat difficult of condensation. It rapidly reviews the steps in the litigation exhibited in 14 Hawaii, 651; 18 Hawaii, 625; 19 Hawaii, 47 and 334; and 222 U. S. 285. Then this comment was made:

"Notwithstanding the statement made in the Lewers & Cooke case (19 Hawaii, 48) that there had been no reversal of the facts found by the court of land registration, the fact found by that court that Kinimaka 'was the natural guardian of the minor' was not included in the findings of fact certified up by this court on the appeal to the United States Supreme Court. And the fact that the guardianship relation existed, vitally important though it was, seems to have received scant consideration in that case. That Kinimaka was the testamentary guardian of

Kalakaua's property seems to be beyond the range of dispute at this time. If the relation existed in fact a question as to the regularity of the appointment would not prevent the assertion of any rights the ward would otherwise have against the guardian. 'It is not essential that a legal guardianship should exist; the doctrine (constructive fraud) applies wherever the relation subsists in fact.' 2 Pom. Eq. Jur. Sec. 961.

"We are satisfied that this court fell into error in the Lewers & Cooke case in taking the view that the equity suit before Chief Justice Allen constituted an attack on the award of the land commission and that the decree in that suit amounted to a setting aside of the award. None of the prior decisions in this jurisdiction which were cited in support of the view taken are authority for the conclusion reached, as an examination of them will show."

Hawaiian cases were reviewed and the court said:

"The question now presented is whether a minor on coming of age could obtain relief in equity against a guardian who had, in fraud of his ward, presented a claim and obtained in his own name an award from the land commission of title to the minor's land. This question was neither involved nor discussed in any of those cases.

"The case of the guardian of a minor obtaining an award in his own name of land belonging to his ward is analogous to the case of a guardian who purchases land with money belonging to the ward, and, in violation of his fiduciary duty, intentional or otherwise, takes the title in his own name. In such a case it is well settled, equity, regarding the land as being the property of the ward, will declare and enforce a constructive trust in favor of the ward and order the conveyance of the legal title. 3 Pom. Eq. Jur. Secs. 1052, 1058."

After further review of the case and consideration of the rights of Kalakaua, the action and duty of Kinimaka, the character and effect of the proceedings which he had in-

stituted and which were instituted against him by Kala-
kaua and, after his death, against his devisees, the court
declared that certain principles resulted therefrom and
that "within these principles, then, the decree of 1858 was
not erroneous but right."

The character of the awards of the Land Commission
was considered and described and their proper relation
to the questions and rights of the parties in the case; and
this was said: "If the decree in *Kalakaua* v. *Pai and Arm-
strong* was right it ought to be enforced. If the decision
in the *Lewers & Cooke Case* was correct the present bill
should be dismissed, but if it was wrong, in justice to the
appellee, it ought not to be followed if it can be avoided.

"Being of the opinion that this court was wrong in the
conclusion reached in the *Lewers & Cooke Case,* ·and that
the decree of 1858 was not 'erroneous in a fundamental
principle,' and, for the reasons stated in the former opin-
ion in the case at bar, should not be reopened, we should
feel inclined to depart from the ruling made in the *Lewers
& Cooke Case* were we not bound by it because of its having
been affirmed by the United States Supreme Court.

\*      \*      \*      \*      \*      \*      \*      \*

"It makes no difference that in making that decision
the Supreme Court followed the opinion of this court upon
a matter of local law (222 U. S. 294), and that we now be-
lieve that that opinion was not well founded. If the for-
mer ruling is to be reversed the reversal is to be made by
that court and not this. The most that we can do now is
to respectfully point out wherein, in our judgment, the
former opinion was wrong. This we have done, believing
it was our duty to do it, and with this our duty in the
premises ends."

We have been at pains to recite the pleadings in the
case, the steps in the litigation they detail, and the ruling
and comments of the Supreme Court in order to bring
the factors of judgment under review in proper connection

and to estimate the constraint the court deemed that it
was under to follow the decision of this court in the *Lewers* ·
*& Cooke Case*, and whether the court was justified in its
view of that case.

The case at bar easily resolves itself into a few simple
facts and principles which may be summarized from the
pleadings and findings of fact. Kaniu, whose adopted son
Kalakaua was, on the day of her death, by oral will and
according to the custom of the country, appointed him
her heir and left him all of her property. Kinimaka was
Kalakaua's guardian, and, at a session of the Board of
Land Commissioners, procured the land to be awarded to
himself. Then followed litigation—commenced by Kala-
kaua, to declare Kinimaka his trustee of the title—which
continued after the latter's death against his children,
properly represented, and his widow, which resulted in
the decree (November 2, 1858) establishing Kalakaua's
title to the land.

The decree was not complied with as directed but was
in effect obeyed, and Kalakaua retained possession of the
land and he and his successors have ever since continued
in the open possession of it, of which possession the chil-
dren of Kinimaka were aware and at no time asserted any
claim to the lands or denied the rights of Kalakaua and
his successors thereto, but at all times acquiesced in the
possession of Kalakaua and his successors in title.

Then came the action of ejectment by defendant At-
cherley and this suit to enjoin its prosecution.

The bill was dismissed upon demurrer and the case
carried to the Supreme Court of Hawaii, which reversed
the decree.

Pending the suit the complainant transferred its interest
by warranty deed to Lewers & Cooke, Limited. The lat-
ter instituted suit in the Court of Land Registration to
register its title, and it was decreed by that court that it
had a good title which was entitled to be registered. The

decree was reversed by the Supreme Court of Hawaii and subsequently this court affirmed the judgment of the Supreme Court.

The determining proposition in the case (*Lewers & Cooke Case*) was that the award of the Land Commission was "conclusive against every form of attack" except by appeal by a party who had presented his claims to the Board. The court considered it immaterial from whom Kinimaka received the lands or whether he was guilty of actual fraud or had an honest belief in his title. And it was said: "The objection to the decree of 1858 appears to go to the jurisdiction of the court over the subject matter, for the Land Commission's award was the final decision of a court of record which was the only court of competent jurisdiction to decide claims to land accruing prior to its establishment, and its decision could not be attacked except by appeal provided by law." But the court further said that even if the objection did not go to the jurisdiction of the court, the result would be the same because of the finality of the Land Commission's award. 18 Hawaii, 625, 638, 639. See also 19 Hawaii, 47, 334.

The suit in the Court of Land Registration and the action of the courts thereunder were set up in the present suit as *res judicata*. The trial court decided against the defense and other defenses, and decreed the relief prayed by complainant. The decree was reversed by the Supreme Court.

We have given excerpts from the opinion of the court showing the grounds of its action. It will be observed that the court frankly declared that it had fallen into error in the *Lewers & Cooke Case* by deciding that the equity suit in which the decree of 1858 in favor of Kalakaua was rendered was an attack on the award of the Land Commission and that the decree amounted to a setting aside of the award, but felt that it was its duty to adhere to the decision as it had been affirmed by this court, and, explaining

our affirmance, said that the "vitally important" fact that Kinimaka "was the natural guardian of the minor [Kalakaua] was not included in the findings of fact certified up." And the court (Supreme Court of Hawaii) declared: "That Kinimaka was the testamentary guardian of Kalakaua's property seems to be beyond the range of dispute at this time." This relationship necessarily was the important fact. Without it Kalakaua had no claim of title; with it his right and the right of complainant as his successor are established and the decree of 1858 establishing his title was correct and the decree in the *Lewers & Cooke Case* erroneous.

But defendants say, granting the latter decree was erroneous, the decree of 1858 was also erroneous, and that the case then presents the opposition of one erroneous judgment to another and the last should prevail. And to establish that the decree of 1858 was erroneous they enter into a discussion of the laws of Hawaii, the consideration of the principles upon which the Hawaiian Monarchy was established in 1845–7, the abolition of the old feudal tenures of land, the creation of a court (the Board of Land Commissioners) to quiet land titles, the awards of which were to be final, and the foundation of fee simple titles to the Kingdom. But the contentions thus presented have intricate character, and can only have clear comprehension in local experience and understanding and are best determined by local interpretation and the decisions of the courts "on the spot"; and this we recognized when we affirmed the decree in the *Lewers & Cooke Case*. The powers of the Land Commission, we said, "involve obscure local history concerning a time when the forms of our law were just beginning to superimpose themselves upon the customs of the islanders. Such customs are likely to be distorted when transmitted into English legal speech."

And such consideration and defense moved or tended to move to the decision in the case. A reference, it is true,

was made to the contention that Kinimaka was guardian of Kalakaua, but the fact was dismissed as being a suggestion having no substantial foundation, and also, again deferring to the local judgments, it was said of the suggestion that "it would be going very far to apply the refined rules of the English Chancery concerning fiduciary duties to the relations between two Sandwich islanders in 1846 on the strength of such a fact."

This relationship has since been cleared up and given definite obligations and duties, and even in 1846 under the law of the islands a guardian could not through the instrumentality of an award of the Land Commission obtain a title to the property of his ward which was immune from subsequent attack and the wrong of it be without redress. The fact of guardianship being established, and such being its legal consequences under the law of Hawaii, according to the latest decision of the Supreme Court of Hawaii, it would be going far to say that a decision was intended to be made against it by the comment which we have mentioned, or by the other comments in the opinion.

For instance, the present case was referred to as pending and it was said that as it had not passed to a final decree there was nothing in the form of action of the court to hinder the court from adopting the principle laid down, even though it thereby should overrule an interlocutory decision previously reached. And we may add that there was nothing to hinder the court from changing its action, which it did, we have seen, on a different view of the law, or the complainant from availing itself of such change, unless indeed the first decision had the finality of *res judicata*.

This is contended, it being urged that the decision of the Land Commission had such binding effect as well on complainant as on Lewers & Cooke, Limited. The contention is based on the following findings of fact:

"In the suit of Lewers & Cooke, Limited, referred to in

these findings, C. W. Ashford, then vice-president of
Kapiolani Estate, Limited, and now its counsel in this
case, appeared at the trial in the Court of Land Registra-
tion and assisted counsel for Lewers & Cooke, Limited,
in the conduct of the case by examining three witnesses,
and did this at the request of John F. Colburn, who was
the treasurer of Kapiolani Estate, Limited, and the officer
of Kapiolani Estate, Limited, who in the regular course
of business employed attorneys for it. Said John F.
Colburn was a witness on behalf of Lewers & Cooke,
Limited, at that trial.

"Messrs. Kinney, Marx, Prosser & Anderson, while at-
torneys for Kapiolani Estate, Limited, in this case, were
retained by Kapiolani Estate, Limited, through John F.
Colburn, its treasurer, to appear as counsel for Lewers &
Cooke, Limited, at two hearings before the Supreme Court
of Hawaii subsequent to the final decision, and so ap-
peared, and also, on such retainer, signed the assignment
of errors upon appeal from the Supreme Court of Hawaii
by Lewers & Cooke, Limited, to the Supreme Court of the
United States. The Kapiolani Estate, Limited, was not,
however, named as a party to said suit of Lewers & Cooke,
Limited, and its counsel took no further part by its direc-
tion in the proceedings."

In passing on the contention the Supreme Court of
Hawaii said: "Counsel for appellants [appellees here] con-
tend that under the decree in the *Lewers & Cooke Case* the
whole matter is *res judicata*. But as the appellee [appellant
here] was not a party to that case and is not a privy of
Lewers & Cooke, Limited, the ground is untenable."
As to the last proposition, that is, that complainant was
not a privy of Lewers & Cooke, Limited, the view of
the court seems to be sustained by *Wood* v. *Davis*, 7
Cranch, 271, and *Cadwallader* v. *Harris*, 76 Illinois, 370.
The first proposition is one of fact. There was a distinct
issue upon the fact and the conclusion of the court was

virtually a decision upon the issue that the acts described
were not authorized by the complainant corporation but
were individual.   And we may say it is disputable besides
if they constituted. an appearance of the complainant.
*Schrœder* v. *Lohrman,* 26 Minnesota, 87.

The principle invoked by defendants is that one who
warrants a title is concluded by a judgment against the
title in a suit brought against his grantee, even when the
title is aggressively used.   *Andrews* v. *Denison,* 16 N. H.
469.   But in favor of whom and under what conditions?
In favor of the grantee undoubtedly when he brings suit
on his covenant against his vendor.   But will it be avail-
able in favor of the successful assailant of the title?   *Wood*
v. *Davis* and *Cadawallader* v. *Harris, supra,* are authority
against the proposition.

But, granting this is disputable, and cases may be cited
the other way, it is well established that in order to make
the judgment available even to the grantee of the title his
covenantor must receive notice of the suit and an opportu-
nity to defend it.   Such notice was not proven in this case.
We certainly cannot assume that notice was given against
the decision of the Supreme Court virtually to the con-
trary, accepting, indeed, the finding of the trial court.   The
trial court, as we have seen, found that the allegations of
fact contained in complainant's bill of complaint, as finally
amended herein, and in its said replication, were true.
The replication contained a denial of the averment of the
supplemental answer that complainant had notice of the
proceedings in the Court of Land Registration, the Supreme
Court of Hawaii or the Supreme Court of the United States,
though it admitted "that certain of its officers and direc-
tors in their capacity as individuals (but not in their capac-
ity as such officers or directors of said complainant corpo-
ration) were aware of the pendency of said proceedings."

*Decree reversed and cause remanded for further proceedings
in accordance with this opinion.*