## WOLFE et al. v. BARATARIA LAND CO.

(Circuit Court of Appeals, Eighth Circuit. January 8, 1919.)

· No. 4966.

COVENANTS ⬅121(3)—JUDGMENT AGAINST COVENANTEE—EFFECT.

    To hold a warrantor in a deed bound by the result of a suit involving the matter upon which his obligation rests, it is not necessary that he be a formal party to the record, but it is sufficient if he has information of the suit and an invitation and opportunity to participate in it.

    Wade, District Judge, dissenting in part.

In Error to the District Court of the United States for the Northern District of Iowa; Henry T. Reed, Judge.

Action at law by the Barataria Land Company against John D. Wolfe and others. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

F. F. Dawley, of Cedar Rapids, Iowa (Dawley & Jordan, of Cedar Rapids, Iowa, and C. W. Kepler & Son, of Mt. Vernon, Iowa, on the brief), for plaintiffs in error.

J. H. Trewin, of Cedar Rapids, Iowa (John M. Redmond and John D. Stewart, both of Cedar Rapids, Iowa, on the brief), for defendant in error.

Before HOOK and STONE, Circuit Judges, and WADE, District Judge.

HOOK, Circuit Judge. The Barataria Land Company sued the Wolfes in the United States District Court for the Northern District of Iowa to recover a part of the purchase price paid them for a tract of land in Louisiana, which they sold and conveyed to it with cove-

---

nants of seizin and warranty. The price paid was an agreed sum per acre, and the action was brought because of a shortage in the area, afterwards ascertained.

To show the extent of the shortage the plaintiff introduced in evidence the record of a decree of a court of Louisiana in a suit between it and an adjoining landowner to settle a controversy over their boundary line. The line established by the decree lessened the area conveyed and warranted to the plaintiff. Upon proof that the defendants Wolfe were informed of the pendency of the Louisiana suit, and were invited to aid plaintiff in the trial of it, the court instructed the jury that the decree was conclusive of the true boundary line, leaving them only to compute their award upon the shortage disclosed and the price paid per acre. Accordingly there was a verdict and judgment for the plaintiff, and defendants prosecuted this writ of error. The question is of the correctness of the court's instruction.

A statute of Louisiana provides for suits to settle controversies over boundary lines. Such a suit does not depend upon adverse possession by a defendant as in actions in ejectment, but upon the existence of a controversy over the true boundary between adjoining owners, and it is not material which of the disputants commences it. The remedy provided by the statute makes for good order, and in effect, if not in form, may in a sense result in the judicial establishment of title. The plaintiff here was also the plaintiff in Louisiana, but there is no sound reason in that circumstance why those beholden to it may not be concluded by the decree as much as if it had been a defendant in ejectment and had suffered eviction. The controversy was a justiciable one, affecting plaintiff's right to land embraced in the description in defendants' deed. It is not denied that there was a real controversy between the plaintiff and the adjoining owner over the boundary line, and no fraud or collusion appears. The judicial determination of it must necessarily have been in Louisiana.

To hold a warrantor, indemnitor, or person in a similar relation, bound by the result of a suit involving the matter upon which his obligation to another rests, it is not necessary that he be a formal party to the record. The strict principles of res adjudicata do not apply. His privity or relation to the record party precedes the judgment, and it is sufficient if he has information of the suit and an invitation and seasonable opportunity to aid or participate in the conduct of it. Chicago v. Robbins, 2 Black, 418, 17 L. Ed. 298; Robbins v. Chicago, 4 Wall. 657, 18 L. Ed. 427. In that case the city sued Robbins to recover the amount of a judgment it was compelled to pay to one Woodbury for injuries caused by his falling into an excavation in a public street which Robbins made and negligently left unguarded. Robbins had been informed of the Woodbury suit against the city and of the approaching trial, and was requested by the city to aid it in procuring testimony. He was not formally notified to defend, nor that he would be held responsible for the result. The Supreme Court held that such a notice was not necessary. That case was founded on a tort, but the principle applies as strongly where the duty to indemnify or hold harmless arises from contract. There is a diversity of views in the state courts as to the

notice that should be given the indemnitor or warrantor. Some require an express notice or request to participate as a party to the cause, and a declaration of the consequences if it is ignored; but the modern trend is towards a relaxation of that strictness. The better rule is that of Oceanic Steam Nav. Co. v. Compania Transatlantica Espanola, 144 N. Y. 663, 39 N. E. 360, as follows:

"No particular form of words is necessary in order to constitute notice in such cases, nor is it even necessary to give a written notice. It is sufficient that the party against whom ultimate liability is claimed is fully and fairly informed of the claim, and that the action is pending with full opportunity to defend or to participate in the defense. If he then neglects or refuses to make any defense he may have, the judgment will bind him in the same way and to the same extent as if he had been made a party to the record."

But, however this may be, the rule of Robbins v. Chicago prevails in federal jurisdictions. There is nothing inconsistent with it in Kapiolani Estate v. Atcherly, 238 U. S. 119, 35 Sup. Ct. 832, 59 L. Ed. 1229, Ann. Cas. 1916E, 142.

The defendants knew of the controversy over the boundary line several years before the Louisiana decree was rendered. They afterwards learned of the pendency of the suit there; they had a copy of the petition in the case, and made surveys on their own account, all in ample time for their affirmative aid and participation in the litigation. About four months before the decree was rendered they were requested by plaintiff to furnish any evidence they had for use at the trial, and to make suggestions about the establishment of the true boundary line. They replied in substance that if plaintiff would dismiss the present action, which had been brought and was then pending in Iowa, "and waive its claims for damages by reason of alleged shortage," one of the defendants would go to Louisiana and testify and furnish what information he could; otherwise not. This correspondence was conducted between counsel of the parties to this suit, but one of the defendants saw the plaintiff's letter. They made no claim of any lack of complete information, or of insufficiency in time or character of the notice and request. Their position, quite untenable, was that, if plaintiff did not dismiss the present action and waive its claim for damages, they would not disclose the evidence they had prepared for their own defense. Manifestly the defendants had information of the suit in Louisiana, and an invitation and an opportunity to aid or participate in its conduct sufficient to bind them to the result.

We have so far considered the case upon the assumption that the Louisiana decree was final. Defendants urge that it was not. It is doubtful that this point was made at the trial definitely enough to attract the attention of the court, but in an amendment to its petition in this cause, setting up the decree, the plaintiff averred that the defendant in that suit had the right of appeal, and that an appeal and reversal might occur. True, this was done in an attempt by plaintiff to reserve the right to increase its claim for damages; but the averment cannot be ignored, and it must be considered in connection with an entire absence in the record before us of anything indicating a finality of the Louisiana decree. We cannot say that an appeal was not

taken, or that, if taken, it would not materially and substantially change the rights of the parties to that suit, as well as the rights of defendants here. For this reason the judgment must be reversed and a new trial awarded, but nothing we have said shall be taken to affect the discretion of the trial court to hold the case until the appeal, if one was taken, results in a final decree.

The judgment is reversed, and the cause is remanded for a new trial.

WADE, District Judge (concurring in part and dissenting in part). I concur in the reversal of this case upon the ground that the Louisiana decree was not at the time of the trial final; but I cannot agree with the majority of the court in holding that the decree in the Louisiana case (if final) concludes the defendants (herein referred to as the Wolfes). The right of every man to his "day in court" is so important that it should be carefully guarded.

> "It is a rule as old as the law, and never more to be respected than now, that no one shall be personally bound until he has had his day in court, by which is meant, until he has been duly cited to appear, and has been afforded an opportunity to be heard. Judgment without such citation and opportunity wants all the attributes of a judicial determination." Galpin v. Page, 18 Wall. 350, 21 L. Ed. 959; Old Wayne Mutual Association v. McDonough, 204 U. S. 8, 27 Sup. Ct. 236, 51 L. Ed. 345.

Cases cited in majority opinion have gone far toward depriving parties of this right, and this case in my judgment goes a step further than any of the courts have yet ventured. The plaintiff (herein referred to as the Land Company) had already instituted this suit in the Northern district of Iowa before it commenced the proceedings in Louisiana. It was not evicted, and no suit was instituted against it in Louisiana. It elected to commence the boundary line case hundreds of miles away from the residence of the defendants, and in a jurisdiction where they should not be called upon to litigate—especially when there was a suit pending against them in the proper jurisdiction involving the same issues.

The Land Company certainly had a right to elect whether the suit in Louisiana should be such as to become binding upon its grantors. The majority opinion states that it is sufficient if the party sought to be held "has information of the suit, and an invitation and seasonable opportunity to aid or participate in the conduct" of the case. With this I agree, provided it means that the party has full opportunity to appear and try the case in his own way, make his own issues, introduce testimony, and cross-examine witnesses. Less than this does not give him his "day in court."

In this case I cannot agree that the Wolfes had any "invitation" to take part in the trial. I think, under all the facts, such invitation is distinctly negatived. I am satisfied that the Land Company had no purpose or intention of binding the Wolfes by the decree in the Louisiana case. I am convinced that the claim of an adjudication was an afterthought.

This case was commenced in June, 1915, the suit in Louisiana was instituted in October, 1915, and not until January 25, 1916, six days

before the case was assigned for trial, did the Land Company advise the Wolfes of the pendency of the suit, and this was by a letter which could not reach counsel for Wolfes before January 26th. That it was not an invitation to have their "day in court" in the Louisiana case is indicated by the following language in the letter:

"Kindly give this matter your prompt attention, as the boundary line suit is set for trial, as we understand it, on January 31, 1916."

"Kindly use the telegraph, if necessary, at our client's expense, citing records and giving names of witnesses, with their addresses," etc.

It was easy for the Land Company to have plainly demanded, or at least invited, the Wolfes to appear in the case; instead it is said:

"We respectfully request that they [the Wolfes] furnish to the Barataria Land Company any and all information they have which will aid the Barataria Land Company in determining and settling the boundary of the lands purchased by the Barataria Land Company from your clients in a proper way. If your clients have any information which will tend to establish the boundary in accordance with the description in the deeds, our clients, the Barataria Land Company, will be more than pleased to have you furnish it, and will be glad to consider any suggestions you may have in reference to establishing the true boundary lines of the land purchased by the Barataria Land Company from Messrs. Wolfe and others."

The whole letter is plainly a request that the Wolfes furnish to the Barataria Land Company information which they may have acquired in preparing their defense in the Iowa case, and it is to me just as plainly a notice to the Wolfes that the Land Company is going to conduct the case itself.

That it was so understood by counsel for the Wolfes is shown by their answer to the letter, and that the Land Company so understood it is plain from the fact that, while the decree was rendered in the boundary line case in May, 1916, and there was an amendment filed to the petition in this case on June 20th—practically a month after the decree was rendered, in which the Louisiana suit is referred to, no suggestion was made that the Wolfes were bound by the adjudication. It was not until October 3, 1916—the day before the trial of this case was commenced—that any pleading was filed setting forth the claim that the letter was sent, and that the adjudication was binding.

I do not believe that a person can be bound in such a case, except where he, as a reasonably prudent man, is justified in believing that the other party expects him to make defense, and contemplates that the adjudication shall be binding upon him. I assume that, if the Land Company had distinctly stated, "We will be glad to have any evidence you can furnish, but we do not expect you to take any part in the trial," no one would contend that the Wolfes would be bound by the decree. To my mind, this was in effect, under all the circumstances, just what was conveyed to the Wolfes.

I think there is a marked distinction between a case where the vendee of land is made a defendant in a suit which seeks to evict him from some of the land purchased, and one in which the vendee commences the suit. In the suit by the vendee, he has control of the litigation; he can elect whether to make his vendor a party or not; he can make his own issues, and in such case I do not believe that his

vendor is bound by the decree, unless the vendee, in clear and unmistakable language, notifies or invites the vendor to join with him in the trial. If his conduct is such (as in this case) as to make the vendor, as a reasonably prudent man, believe that he is not expected to join in the case, he should be estopped from relying upon the decree rendered.