## COFFMAN v. FEDERAL LABORATORIES, Inc., et al.

Civ. Nos. 3046, 4216.

District Court, W. D. Pennsylvania.
Oct. 6, 1947.

William H. Eckert and John G. Buchanan (of Smith, Buchanan & Ingersoll), both of Pittsburgh, Pa., for plaintiff.

Charles Lysle Seif and Max V. Schoonmaker, both of Pittsburgh, Pa., for defendant.

Roy C. Hackley, Jr., Sp. Asst. to Atty. Gen., for the U. S.

McVICAR, District Judge.

The above actions consolidated for trial and all subsequent proceedings by order of March 14, 1947, involve suits by plaintiff to recover royalties alleged to be due the plaintiff from the defendant under a patent license agreement dated December 8, 1932. Defendant set up as a defense that the actions are barred by the Royalty Adjustment Act of October 31, 1942, 35 U.S. C.A. § 89 et seq. After final hearing, the Court makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact

1. Roscoe A. Coffman (hereinafter referred to as the plaintiff) is a resident and citizen of Las Vegas, State of Nevada.

2. Federal Laboratories, Inc. (hereinafter referred to as the defendant) is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business in the City of Pittsburgh, Pennsylvania.

3. Breeze Corporations, Inc. (hereinafter referred to as Breeze) is a corporation organized and existing under the laws of the State of New Jersey, having its principal place of business in the City of Newark, New Jersey. Although this Corporation was named as a party defendant in Civil Action 3046 it was not served with process, has not appeared and is not within the jurisdiction of this Court in said action.

4. The amount involved in these actions exclusive of interest and costs, exceeds the sum of $3,000.

5. On July 18, 1944, United States filed its Motion to Intervene in these actions, and on the same day its motion was granted and United States was allowed to intervene.

6. On December 8, 1932, plaintiff and defendant entered into an agreement, a correct copy of which is attached to the complaint filed in each action, and at the time of making the said agreement the plaintiff was the inventor and sole owner of the letters patent referred to in said contract. In said contract, plaintiff granted a non-assignable and exclusive license to defendant to make, use and sell devices

and shells embodying the inventions set forth in the patents mentioned in said agreement. It was provided that defendant, licensee, pay to plaintiff, licensor, the sum of $5,000 for the first 200 devices made for consumption of shells; also that defendant shall pay to plaintiff a "licensee fee or royalty equal to six percent (6%) of the Licensee's net selling price on all devices and parts thereof sold".

7. Subsequent to the making of the agreement between the plaintiff and the defendant dated December 8, 1932, Breeze purchased all of the issued and outstanding capital stock of the defendant and became, has been and now is the sole owner thereof. On or before July 6, 1937, said Breeze became the owner of 98.9% of all the common stock of defendant, and at the same time all of the then outstanding preferred stock of defendant was retired and cancelled, and by January 8, 1940, Breeze had become the 100% owner of all the issued and outstanding stock of defendant, and has continued as sole owner of defendant ever since.

8. Plaintiff, in these actions, seeks an accounting from defendant, payment of the sums found to be due him, a termination of the aforesaid license contract and general relief.

9. On February 24, 1943, the U. S. Navy Department and on March 3, 1943, the U. S. War Department, gave plaintiff and defendant notice pursuant to the Royalty Adjustment Act of October 31, 1942, that the royalties provided for in the aforesaid license agreement of December 8, 1932, were believed to be unreasonable and excessive and that until the making of a royalty adjustment order, no further royalties should be paid to plaintiff.

10. Pursuant to the terms of the Royalty Adjustment Act, the Secretary of the Navy of the U. S., December 23, 1943, issued a royalty adjustment order N-7 and on December 18, 1943, Secretary of War of the United States issued royalty adjustment order W-9, copies of which were served on plaintiff and defendant. These orders read in part:

"(1) Fair and just rates and amounts of royalties for the manufacture, use, sale or other disposition of said alleged inventions are hereby determined, fixed and specified to be as follows:

"(a) Upon each starter sold to or for either the War Department or the Navy Department, the sum of Eight ($8) Dollars each, and

"(fol. 53) (b) upon parts and cartridges sold to or for either the War Department or the Navy Department, no royalties; but not to exceed the sum of Fifty Thousand ($50,000) Dollars to be paid to Licensor in each calendar year commencing January 1, 1943 in respect of starters sold to or for the War Department and the Navy Department, added together.

"(2) Until further Order. License is hereby authorized to pay to Licensor, on account of any manufacture, use, sale or other disposition of said alleged inventions for the War Department heretofore occurred, or hereafter occurring while Sections 1 and 2 of said Act remain in force, royalties at the rate and not to exceed the amount determined, fixed and specified in paragraph (1) hereof, and no more, under

"(a) The above-mentioned licensor agreement dated December 8, 1932, and

"(b) any license or arrangement between Licensor and Licensee entered into on or after the effective date of said notice and during the time that Sections 1 and 2 of said Act remain in force which in any respect continues, supplements, modifies or supersedes the license referred to in subparagraph (a) hereof or the present arrangement under which said royalties are paid.

"(3) Licensee is hereby directed to pay over to the Treasurer of the United States, * * * the balance in excess of the payments authorized by paragraph (2) hereof, of all royalties specified in the licenses or arrangements referred to in paragraph (2) hereof which (fol. 54) were due to Licensor and were unpaid on the effective date of said notice, or since said date have or may hereafter become due to Licensor, on account of any manufacture, use, sale or other disposition of said inventions for the War Department or the Navy Department heretofore occurred or hereafter occurring while Sections 1 and 2 of said Act

remain in force; and demand is hereby made for payment forthwith of so much of said balance as is now due to Licensor."

11. On October 31, 1944, plaintiff filed a motion for summary judgment against defendant which reads: "The plaintiff hereby moves for a summary judgment in his favor in the sum of $60,510.46, with interest on the sum of $10,510.46 from December 31, 1942, and on the sum of $50,000 from December 31, 1943, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure [28 U.S.C.A. following section 723c], because the pleadings and the admissions of record show that there is not genuine issue as to any material fact requiring a trial as to that much of plaintiff's claim, and that the plaintiff is entitled to judgment for that much of his claim as a matter of law against Federal Laboratories, Inc."

This Court, by Judge Gibson, made an order December 15, 1944, which as amended by stipulation of January 18, 1945, reads: "And now, to wit, December 15, 1944, the plaintiff's motion for summary judgment for a portion of his claim having regularly come on for argument, after hearing all parties and due consideration, it appearing from the pleadings, admissions and affidavits on file that there is no genuine issue as to any material fact that the defendant Federal Laboratories, Inc., is indebted to the plaintiff on account of royalties under the license agreement between them at least to the Extent of $10,510.46 for the year 1942 and at least $28,052.10 for the year 1943 and that Royal Adjustment Orders W-9 and N-7 allow said amounts to be paid to the plaintiff by said defendant, and that plaintiff is entitled to a judgment as a matter of law for that portion of his claim, it is hereby Ordered, Adjudged and Decreed that judgment be and it hereby is entered in favor of the plaintiff and against the defendant Federal Laboratories, Inc., for $38,562.56 with interest on the sum of $10,510.46 from December 31, 1942, and on the sum of $28,052.10 from December 31, 1943, without prejudice to the plaintiff's right to proceed for the balance of his claim."

12. Plaintiff's claim in these actions is as set forth on Exhibit-2 (Exhibit-A therein) offered in evidence at trial, as follows:

Federal—Breeze Summaries
Unpaid Royalties Based on Stipulated Sales
January 1, 1937 thru December 31, 1944

| Period | Amount | Total |
|---|---|---|
| January 1, 1937 thru Oct. 30, 1942 | $ 55,655.50 | |
| Oct. 31, 1942 thru Dec. 31, 1942... | 12,245.97 | $ 67,901.47 |
| | | |
| Jan. 1 to Feb. 23, 1943—Navy.... | 14,305.31 | |
| Jan. 1 to Mar. 2, 1943—Army... | 2,123.09 | |
| Feb. 24, to Dec. 22, 1943—Navy... | 153,819.75 | |
| Mar. 3 to Dec. 17, 1943—Army... | 14,422.68 | |
| Dec. 23 to Dec. 31, 1943—Navy... | 8,635.98 | |
| Dec. 18 to Dec. 31, 1943—Army.. | 68.38 | |
| | $193,440.19 | |
| Civilian Sales—1943: Jan. 1 to Feb. 23 | $109.92 | |
| Feb. 24 to Dec. 22 | 1,832.24 | |
| | $ 1,942.16 | |
| Total for 1943 ........................... | | $195,382.35 |
| January 1 to December 31, 1944........... | | 414,545.48 |
| Grand Total ........................... | | $677,829.30 |

13. The royalties plaintiff seeks to recover in these actions are for use of his inventions which were assigned by him to the defendant under the license contract of December 8, 1932. From 1937 to 1944, both inclusive, these inventions of plaintiff were used by the United States in all of the above sales with the exception of the item of $1,942.16. As to this item, which was for sales made in 1943, a tabulation furnished by plaintiff's witness in Intervenor's Exhibit A, discloses that at least a large part thereof was for Government use. If any part thereof was for non-Government use, the evidence does not disclose the amount thereof.

### Conclusions of Law

1. The Royalty Adjustment Act of October 31, 1942, 35 U.S.C.A. § 89 et seq., is applicable to the sales in this case for governmental use.

2. Exclusive jurisdiction is conferred on the Court of Claims. This Court does not have concurrent jurisdiction by reason of the amount involved.

3. The orders made by the War and Navy Departments apply to all sales for Government use during 1943 and 1944 and prior thereto, which were not paid.

4. The evidence is this case discloses that all the sales made were for Government use. If any were made for non-governmental use, the amount thereof does not appear.

5. The summary judgment order is not Res Judicata, that Royalty Adjustment Orders W-9 and N-7 do not apply to plaintiff's claims for royalties prior to December 31, 1942.

6. The defendant is entitled to judgment in its favor.

## Opinion

On December 8, 1932, plaintiff and defendant entered into a non-assignable and exclusive license contract covering patents named therein relating to improvements in starting motors and shells for use therein. Defendant agreed to pay plaintiff "a licensee fee or royalty equal to six percent (6%) of the Licensee's net selling price on all devices and parts thereof sold".

On October 31, 1942, the Royalty Adjustment Act was enacted which provides in Section 1 that to aid in the successful prosecution of the war, an invention shall be used for the United States with license from the owner thereof and such license includes provisions for the payment of royalties, the amounts of which are believed to be unreasonable or excessive by the head of the department of the Government which has ordered such use. The head of the Department concerned, shall give written notice to the licensor and licensee. Within a reasonable time said officer shall, by order, fix the amount of royalties that are fair and just to be paid by the licensee to the licensor and shall authorize the payment thereof. This section further provides:

"Such licensee shall not after the effective date of said notice pay to the licensor, nor charge directly or indirectly to the United States a royalty, if any, in excess of that specified in said order on account of such manufacture, use, sale, or other disposition. The licensor shall not have any remedy by way of suit, set-off, or other legal action against the licensee for the payment of any additional royalty remaining unpaid, or damages for breach of contract or otherwise, but such licensor's sole and exclusive remedy, except as to the recovery of royalties fixed in said order, shall be as provided in section 2 hereof. * * *"

"Sec. 2. Any licensor aggrieved by any order issued pursuant to section 1 hereof, fixing and specifying the maximum rates or amounts of royalties under a license issued by him, may institute suit against the United States in the Court of Claims, or in the District Courts of the United States insofar as such courts may have concurrent jurisdiction with the Court of Claims, to recover such sum, if any, as, when added to the royalties fixed and specified in such order, shall constitute fair and just compensation to the licensor for the manufacture, use, sale, or other disposition of the licensed invention for the United States, taking into account the conditions of wartime production. * * *"

"Sec. 7. This Act shall apply to all royalties directly or indirectly charged or chargeable to the United States for any supplies, equipment, or materials to be delivered to or for the Government from and after the effective date of the notice provided for in section 1 hereof. This Act shall also apply to all royalties charged or chargeable directly or indirectly to the United States for supplies, equipment, or materials already delivered to or for the Government which royalties have not been paid to the licensor prior to the effective date of the notice provided for in section 1 hereof. * * *"

On February 24, 1943, the United States Navy Department and on March 3, 1943, the War Department, gave plaintiff and defendant notice pursuant to the above Act, that the royalties provided for in the license agreement of December 8, 1942 were believed to be unreasonable and excessive and that until the making of a Royalty Adjustment Order, no further royalties should be paid to plaintiff, and in December, 1943, issued orders effective January 1, 1943 fixing the license fees to be charged under said contract beginning with January 1, 1943, and directed, (as appears in the

Findings of Fact) that the licensee pay to the Treasurer of the United States the balance in excess of the payments authorized by paragraph 2 thereof, which were due to licensor and which were not paid on the effective date of said notice.

These actions seek to recover the license fee due on the sale of the licensed articles, 1937 to 1944, both inclusive. The defendant and the United States Intervenor set up as a defense the aforesaid Act, notices and orders. I am of the opinion that the Act, notices and orders are applicable to the facts in these cases as all the sales were for Government use, with the possible exception of a small item, the amount of which was not established. The Court of Claims has exclusive jurisdiction of these cases and this Court is without jurisdiction.

The summary judgment order is not Res Judicata that Royalty Adjustment Orders W-9 and N-7 do not apply to plaintiff's claims for royalties prior to December 31, 1942. This, I think, is apparent from a reading of the pleadings, the motion and order. (F. of F. 11). The Court did not write an opinion. See Kapioleni Estate v. Atcherley, 238 U.S. 119, 35 S.Ct. 832, 59 L.Ed. 1229, Ann.Cas.1916E, 142; L. E. Waterman Co. v. Modern Pen Co., D. C., 193 F. 242; Ogden City v. Weaver, 8 Cir., 108 F. 564, 567; Graff Furnace Co. v. Scranton Coal Co., 3 Cir., 266 F. 798; See also Timkin-Detroit Axle Co. v. Alma Motor Co., 3 Cir., 144 F.2d 714.

Plaintiff contends that the aforesaid Act is unconstitutional. As to whether this is a proper time and Court to raise that question see Aircraft & Diesel Equipment Corporation v. Hirsch, et al., 67 S.Ct. 1493, Opinion, Justice Rutledge.

The Circuit Court of Appeals for the Third Circuit held that the Royal Adjustment Act was constitutional, Timken-Detroit Axle Co. v. Alma Motor Co., 3 Cir., 144 F.2d 714. This decision should be followed by this Court.

Under the facts and law, judgment should be entered for the defendant. Let an order be prepared and submitted.