ESTES and others *v.* WILLIAMS and others.

*(Circuit Court, S. D. New York. July 31, 1884.)*

TRADE-MARK—FOREIGN PUBLISHER—AMERICAN ASSIGNEE—USE OF A NAME—RIGHT OF ACTION.

The publisher of "Chatterbox," in England, having assigned the exclusive right to use and protect that name in this country, the assignee may maintain his action against any other person who undertakes to publish books under that name in the United States.

In Equity.

*J. L. S. Roberts,* for orators.

*Walter M. Rosebault* and *Roger Foster,* for defendants.

WHEELER, J. Mr. James Johnston, of London, England, appears to have published a regular series of juvenile books of uniform appearance, and in a style of peculiar attractiveness, and called them the Chatterbox, until they have become widely known and quite popular by that name, in that country and this. He assigned the exclusive right to use and protect that name in this country to the orators for 10 years from January 1, 1880. The defendants have since that time commenced the publication of a series of books, and called them by that name, and made them so similar in appearance and style to those of Johnston as to lead purchasers to think they are the same. As a matter of fact it is found that they intended to make the books appear to be the same, and to avail themselves of the popularity which the books had attained by the labor and skill bestowed upon them by and at the expense of Johnston. There being no copyright to prevent, the defendants claim the right to so print and publish the series of books in this country, and that if they have not the right, the orators have no right to prevent them. There is no question but that the defendants have the right to reprint the compositions and illustrations contained in these books, including the titles of the several pieces and pictures. *Jollie* v. *Jaques,* 1 Blatchf. 618. That does not settle the question as to the right claimed here. There is work in these publications aside from the ideas and conceptions. Johnston was not the writer of the articles nor the designer of the pictures composing the books, but he brought them out in this form. The name indicates this work. The defendant, by putting this name to their work in bringing out the same style of book, indicate that their work is his. This renders his work less remunerative, and while continued is a continuing injury which it is the peculiar province of a court of equity to prevent. These principles are discussed, settled, and applied in *McLean* v. *Fleming,* 96 U. S. 245.

It has been argued that there have been various publications from earlier times by the same name, so that no new right to the use of that name could be acquired. This would be true, doubtless, as to all such publications as those to which the name was applied, but not as

to those essentially different. The fact of these other publications bears only upon the question of fact as to whether Johnston's work had come to be known by this name, and the defendants by using the name represent that their work is the same. The conclusion stated as to the fact has been reached after consideration of what is shown as to these other publications.

Johnston had the exclusive right to put his own work, as his own, upon the markets of the world. No one else had the right to represent that other work was his. Not the right to prevent the copying of his, and putting the work upon the markets, but the right to be free from untrue representations that this other work was his when put upon the markets. This gives him nothing but the fair enjoyment of the just reputation of his own work, which fully belongs to him. It deprives others of nothing that belongs to them.

The question then arises whether Johnston could transfer his right, or any part of it, to the orators, so that the defendants, in what they have done and are about to do, trespass upon the orator's rights, and not upon Johnston's. He could not do all this himself; he must act by and through others. No reason is apparent why he could not give them the exclusive right to put his work on the market as his, as he had that right. This seems to be what he undertook to do. They had that right, and the profits of its enjoyment would belong to them. The defendants would deprive them, and not Johnston, of the profits. The injury would be to them and not to him, and they are, in this view, entitled to the remedy.

It is objected that they also trespassed upon Johnston's rights before they acquired them. This may be true, and, if so, they may be liable for the damages. Such a trespass would not prevent them from acquiring a lawful right in a lawful manner. Had such trespasses been so frequent and long-continued that the work had come to be known to be the work of others, or had lost identification as the work of Johnston, the course of the defendants might not amount to any representations that their work was his; but the evidence does not show this. As the case is now understood the orators appear to be entitled to relief.

Let there be a decree for an injunction and an account.