DE BEKKER v. FREDERICK A. STOKES CO. et al.

(Supreme Court, Appellate Division, Second Department. June 11, 1915.)

LITERARY PROPERTY 9—CONTRACT FOR PUBLICATION—RIGHTS OF AUTHOR.
    Where plaintiff contracted with the S. publishing company for the publication of his work under the name "S. Encyclopedia of Music," the contract recognizing the author as such, and he transferring the sole right to publish and sell such work during the term of copyright, etc., for a cash payment and a 5 per cent. royalty on catalogue prices, and where, after selling a number of copies in the regular trade way, the S. publishing company contracted with the U. publishing company to issue the work as two of a 10-volume set which the U. publishing company was getting out under the title of the Encyclopedia of Music, the plaintiff author was entitled to judgment restraining such second publication and confining publication to the S. company under the name agreed upon by him since, his contract being for the publication of the book under such name, he had the right to insist upon the performance of the provision that the identity of his creation might be preserved.
    [Ed. Note.—For other cases, see Literary Property, Cent. Dig. § 8; Dec. Dig. 9.]

Appeal from Special Term, Kings County.

Action by Leander J. De Bekker against the Frederick A. Stokes Company and the University Society, Incorporated. The defendants appeal from an interlocutory judgment. Reversed, and new trial granted.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLETON, and PUTNAM, JJ.

For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Frederick Trevor Hill, of New York City, for appellants.

Harold G. Aron, of New York City (Stephen L. Vanderveer, of New York City, on the brief), for respondent.

THOMAS, J.   In July, 1907, the plaintiff and the Stokes Company made a contract concerning a work for which they established the name Stokes' Encyclopedia of Music.   The work at the outstart was treated as existing, and the plaintiff was in terms related to it as author and proprietor, a characterization which may not now be impugned, nor is it proper to question the merit of the production, in view of the preface with which the Stokes Company introduced it.   If the work at the time of the contract was existent at all, it was incomplete for publication, and for that purpose the plaintiff agreed to have it ready in eight monthly installments, beginning September 1, 1907.   It was stipulated that the Stokes Company should copyright the work in its own name, and that it should publish it "in such style and manner as they shall deem expedient and at such time or times as they shall see fit."   The contract provided:

"The author hereby bargains, sells, grants, conveys, transfers and sets over unto the  *  *  *  Stokes Company, the sole and exclusive right and privilege to print, publish and put on the market the said work during the whole term of the copyright and all the renewals thereof in the United States  *  *  * in the Dominion of Canada, and elsewhere.   The publishers shall also have all rights of translation, abridgment, dramatization, selection, and other rights of, in, or to said work in the United States  *  *  *  the Dominion of Canada, and elsewhere, and all other rights not given to the author by this contract."

The compensation provided for the author was $500 and 5 per cent. on the catalogue price for all copies sold in the United States in the regular trade way.   It was further provided that, should the—

"publishers desire to sell the work  *  *  *  by subscription, mail order, premium, special advertising, or other similar methods—they are to have the privilege of purchasing the complete rights for such special sales for the sum of $150."

There was an option reserved to the plaintiff to purchase copies of the work on hand and the plates, should the publisher wish permanently to discontinue publication, and also, in case the publisher declined to exercise an option given it to reproduce the plates rendered useless by fire, it was its duty to reconvey the copyright and all rights granted, whereupon the contract should terminate.   The first effort of the publisher was to sell the work in the regular trade way, with the result that the Stokes Company credits plaintiff with the following sales:

| | | |
|---|---|---|
| January 1, 1909 | 609 | copies |
| January 10, 1910 | 285 | " |
| January 9, 1911 | 233 | " |
| January 8, 1912 | 129 | " |
| January 13, 1913 | 100 | " |

The Stokes Company, concurrently with sales in the usual trade way, undertook to sell the work by subscription, not, however, as its own publication and under the name of the Stokes' Encyclopedia of Music & Musicians, under which name the Stokes Company published.

But the Stokes Company, on October 5, 1910, arranged with the defendant the University Society, Incorporated, that the work in the form of two volumes could be published by the society in connection with eight other volumes under the name of Encyclopedia of Music. Pursuant to that agreement, the Stokes Company was entitled to a royalty of 20 cents for each copy of the first edition, and a diminishing percentage for subsequent editions, which the society was permitted to publish during the term of the contract, which was fixed at five years. Some 4,000 copies of the work were printed by the society, and in excess of 3,500 copies have been sold. It appears on the face of the account that in association with the other volumes of the Society's combined edition the sales have been accelerated, but the tenor of the agreement with plaintiff has not been kept. He has the right to insist that the Stokes Company should publish the book under the name of the Stokes Encyclopedia of Music, however advantageous to him some other form of presentation to the public may be. He bound himself to "write or edit no other encyclopedia or dictionary of music or any similar work that will conflict with the sales of said work," and he preserved a residuary interest in the work. The plaintiff was recognized in the contract as an author; he has the strict right to preserve the identity of his creation, and to insist that it shall be issued, if at all, by the Stokes Company. It may augment its circulation to combine it in sale with eight other volumes, but that obliterates its separate existence under a given name. The plaintiff was not entitled to have his own name appear in the book. There was no stipulation to expose the authorship. A name was chosen for the work. The parties are limited to it. Looking, then, to the agreement, I conclude that the Stokes Company was not authorized to confuse the volumes of the work in question with the publication of the society, although there was no intention to ascribe the plaintiff's production to the editor in chief of the larger work, and I consider that it was not done. But there is implied the representation that Elson was the editor in chief of all the 10 volumes, which is not the exact fact. What consequences embarrassing to the plaintiff might ensue is not apparent, but it is just to abide by the truth. The Stokes Company credited the plaintiff with $150 on the theory that the sale was by subscription, but the sale was not such a sale of the book by subscription as the contract contemplated. The judgment recovered is quite disproportioned to the offense, and is, I think, inequitable. It should be reversed, and a new trial granted. Upon the present showing, the plaintiff would be entitled to judgment restraining the defendants from publishing the work under their contract and limiting the publication to the Stokes Company under the name agreed upon by the parties. If the plaintiff should be paid the stipulated percentages on the copies sold, based on usual retail prices, this record shows that full justice would be done. The allowance of the counterclaim is undisturbed. If the present record is not sufficient for that purpose, this court will send the matter to an official referee, unless the parties can agree upon the facts. As the defendants have necessitated the action, the plaintiff, upon the present showing, should have costs, but not of this appeal.

Interlocutory judgment reversed, without costs, and new trial granted, costs to abide the event.   All concur.

JENKS, P. J.   I concur.   It was contended that there was injury in that the name of the plaintiff was not associated with his work by the publishers.   But there is no provision therefor in the contract.   I think there is no implication of such right when a contract is silent, especially when the work is of the character of an encyclopedia.   But this contract is not only silent, but specifically provides that the work is "at present entitled Stokes' Encyclopedia of Music."   The name of an editor is not necessarily a part of the title.   See Crookes v. Petter, 3 L. T. (N. S.) 225, which is also an authority upon the general proposition.