[Civ. No. 6322. First Appellate District, Division Two.—July 30, 1928.]

CHARLES CHAPLIN, Respondent, v. CHARLES AMADOR, Appellant.

Ben M. Goldman and J. J. Lieberman for Appellant.

Loyd Wright and Charles E. Millikan for Respondent.

PRESTON (H. L.), P. J., *pro tem.*—This is an appeal by the defendant, Charles Amador, from a judgment entered against all of the defendants, perpetually enjoining and restraining them, their servants, agents, and employees, and all persons acting in privity with them from, (a) disposing of, advertising or dealing in a motion picture called "The Race Track"; (b) from using the name "Charles Aplin" or "Charlie Aplin," or any other name similar to that of plaintiff in connection with said motion picture, or any motion picture, in imitation of the motion pictures of plaintiff, which will be likely to deceive the public into believing that plaintiff is acting the role therein hereafter referred to; (c) from advertising, selling, or dealing in any motion pictures which are an imitation of the motion pictures of plaintiff, or style of dress, costume, or mannerisms constituting an imitation of the plaintiff in his name or in his playing or acting the part or character or role of "Charlie Chaplin," and which are so like the motion pictures acted in and produced by the plaintiff, and in which the plaintiff plays the principal or leading or any part in such role, as to be likely to deceive the public into believing that said motion pictures are the motion pictures produced and acted by plaintiff, or which would have the likely effect of so deceiving."

The complaint alleges the fame of plaintiff as a motion picture star in the role in question, a valuable subsisting goodwill in such characterization; that he originated, perfected and featured said make-up, garb, and mannerisms;

describes the nature of the garb, make-up, and mannerisms of the character; that defendants have produced some films in imitation of plaintiff's said role and have dubbed Amador therein as "Charlie Aplin"; that the same is a fraudulent scheme and conspiracy to damage plaintiff and the public, etc.

The answer, in effect, is a general denial, and also alleges that plaintiff himself appropriated said make-up, garb, etc., and is himself a direct imitator of others in connection with said role.

The case was tried by the court and findings were made in accordance with the allegations of the complaint and judgment entered accordingly.

The record reveals that Charles Chaplin, commonly known to the public as "Charlie Chaplin," late in the year 1913 originated and perfected a particular type of character on the motion picture screen. In this character, Chaplin has generally worn a kind of attire peculiar and individual to himself, consisting of a particular kind or type of mustache, old and threadbare hat, clothes and shoes, a decrepit derby, ill-fitting vest, tight-fitting coat, and trousers and shoes much too large for him, and with this attire, a flexible cane usually carried, swung and bent as he performs his part. This character, and the manner of dress, has been used and portrayed by Charles Chaplin for so long and with such artistry, that he has become well known all over the world in this character to such an extent that a display of his picture with the word "Charlie," or even with no name at all, has come to mean the plaintiff.

Late in the year 1920, or early in 1921, the defendants, F. M. Sanford and G. B. Sanford, as producers, and the defendant Charles Amador, the appellant herein, as actor, entered into a plan or scheme, the purpose of which was that a series of twelve motion pictures would be produced in which the defendant, Charles Amador, under the name of "Charles Aplin," would perform the leading role. In this scheme Amador was to be dressed in imitation of Chaplin and was to be featured in these pictures under the name of "Charlie Aplin," which was an imitation of the name of "Chaplin." One of the first steps in carrying out this scheme was the sending of letters by defendants to various states' rights distributors of motion pictures

throughout the country. One of these letters contained the following announcement: "We announce the production of twelve two-reel record breaking comedies featuring 'Charlie Aplin' in the well known character, famous the world over." This letter was sent over the name of Sanford Productions, F. M. Sanford, manager. Similar letters were sent throughout the country on the letter-head of Sanford Productions, one of them reading in part as follows: "Our comedian is a world beater in this famous character. There never was a better drawing card. A—Charlie Aplin—contract will soon be a big value in your territory, so wire us at once." On the left-hand margin of this last letter were printed three views of "Charlie Aplin" in "this famous character." Along with one of these letters there was sent a card having on one side of it a picture of Amador as "Charlie Aplin," and having on its reverse side printed matter taken from a San Diego paper, which in part is as follows: "Aplin, whose name is like that of Charlie Chaplin, who looks like him and acts like him, and who is a regular fellow with it all, came down here for the Sanford Productions. . . ."

One picture, called by the defendants "The Race Track," was completed and taken to New York by F. M. Sanford for the purpose of showing it to states' rights distributors. This film was shown to a distributor by the name of Ochs, who considered it so manifestly an imitation of Chaplin's character and Chaplin's name, that he refused to negotiate for it. Learning of this, the plaintiff filed a suit for injunction and obtained a preliminary injunction pending the trial of the suit and defendants were restrained from exhibiting said picture.

At the very opening of the trial counsel for the defendants made this statement: "The defendants are not contesting the rights of plaintiff in the exclusive use of his name or any other name similar to plaintiff's name. We have no desire to use the name of 'Charles Aplin' or 'Charlie Aplin,' or any other name similar in spelling or pronunciation or appearance to plaintiff's name. To that extent, without prejudice to the other issues in the case, the defendants are prepared to permit a decree in that respect, but so far as the other issues in the case are concerned, we shall strenuously oppose them."

The court found, among other things, as follows: " . . . That the plaintiff is the first person to use the said clothes, as described herein and as described in the complaint, in his performing as an actor in motion pictures, and it is true that he originated, combined and perfected the manner of acting and mannerisms mentioned herein as used in motion pictures, and it is also true that the plaintiff is the first person to originate, use, combine and perfect in motion pictures that certain form of acting, those mannerisms, facial expressions and movements of his body hereinabove mentioned and described."

Appellant first contends that there is no evidence that plaintiff originated the role or its separate parts. The evidence upon this question is conflicting. It has been repeatedly held that the findings of the trial court upon conflicting evidence are conclusive and binding upon this court, and all reasonable inferences are to be indulged in support of the findings. The authorities supporting this rule are legion, among .them being *Gjurich* v. *Fieg,* 164 Cal. 429 [Ann. Cas. 1916B, 111, 129 Pac. 464]; *Wilbur* v. *Wilbur,* 197 Cal. 1 [239 Pac. 332].

With this rule in mind, we have made a careful examination of the entire record and we are fully convinced that there is abundant evidence to support all the findings of the trial court. We see no reason, however, to go into a detailed analysis of the large volume of evidence embodied in the record. The finding that plaintiff originated and combined the role is supported by evidence of managers of theaters, motion picture houses, actors and motion picture producers.

No other finding is attacked by the appellant as being unsupported by the evidence.

Appellant's second contention is stated in his brief as follows: "Isn't the sole issue: Monopoly, on the one hand, or means to prevent confusion or deception, on the other hand? We respectfully submit that even though the court accepted the findings, still the law is not and cannot be that the judgment and decree of the court, as framed, can stand."

The question of monopoly is in no way involved in this action. Plaintiff is not seeking to prevent the ap-

■■■■■■■ ■■■■■■■

pellant, Charles Amador, from appearing in motion pictures, but only seeks to prevent him from imitating the plaintiff in such a way as to deceive the public and work a fraud upon the public and plaintiff. The case of plaintiff does not depend on his right to the exclusive use of the role, garb, and mannerisms, etc.; it is based upon *fraud and deception.* The right of action in such a case arises from the *fraudulent purpose and conduct of appellant and injury caused to the plaintiff thereby, and the deception to the public,* and it exists independently of the law regulating trademarks, or of the ownership of such trademarks or trade names by plaintiff. It is plaintiff's right to be protected against those who would injure him by fraudulent means; that is, by counterfeiting his role—or, in other words, plaintiff has the right to be protected against "unfair competition in business." We think the following authorities fully support our conclusion in this regard: *Banzhaf* v. *Chase,* 150 Cal. 180 [88 Pac. 704]; *Modesto Creamery* v. *Stanislaus Creamery Co.,* 168 Cal. 289 [142 Pac. 845], *Bradford Baking Co.* v. *Weber Baking Co.,* 43 Cal. App. 570 [185 Pac. 417], *Weinstock-Lubin Co.* v. *Marks,* 109 Cal. 529 [50 Am. St. Rep. 57, 30 L. R. A. 182, 42 Pac. 142], and *International News Service* v. *Associated Press,* 248 U. S. 215, at pages 234–236 [2 A. L. R. 293, 63 L. Ed. 211, 39 Sup. Ct. Rep. 68].

In the case of *Weinstock-Lubin Co.* v. *Marks, supra,* the court said: "Equity will not concern itself about the means by which fraud is done. It is the results arising from the means, it is the fraud itself, with which it deals. The foregoing principles of law do not apply alone to the protection of parties having trademarks and trade names. *They reach away beyond that, and apply to all cases where fraud is practiced by one in securing the trade of a rival dealer, and these ways are as many and as various as the ingenuity of the dishonest schemer can invent.*"

The same reasons apply with equal force to the case at bar and demonstrate that the plaintiff is entitled to his injunction preventing defendant from imitating the role which plaintiff originated, and thereby injuring plaintiff and deceiving the public into the belief that appellant,

Amador, under the name of "Charlie Aplin," is really the plaintiff, Charlie Chaplin.

A careful review of the evidence, containing the various exhibits of plaintiff and defendant, convinces us that defendant's imitation of plaintiff would be likely to deceive the public and that the whole plan and scheme of the defendants was undertaken with a view of deceiving the public and injuring plaintiff in his business, and if permitted to be carried out it would undoubtedly have that effect.

■ Appellant further complains that the injunction is too broad. We think this contention is without merit. The injunction in its last analysis so far as defendant, who is the only appealing defendant, is concerned, simply enjoins him from *imitating the plaintiff in such a way as will deceive and defraud the public.* We are in full accord with the view of the learned trial judge who, in denying a new trial, said: "Regarding 'The Race Track' picture, the court is convinced that defendants deliberately planned and executed an imitation of plaintiff, designed and calculated to deceive the public into believing that defendant Amador, posing as 'Aplin' was 'Chaplin' and thereby did secure patronage that might not otherwise be obtained and depriving plaintiff thereof, and that the imitation inheres in the entire picture so as to render it impossible of elimination. Regarding the other injunctive features they amount to no more than restraint of imitation; and to avoid their effect defendants need do no more than avoid the imitation and deception."

We see no need of discussing this case further. We think, as above stated, that the evidence is ample to support all the conclusions reached by the trial court and that its decision and judgment was right and proper and should be affirmed.

■ Appellant also appeals from the order denying a new trial. The order denying a new trial is not appealable and for that reason the attempted appeal therefrom is dismissed. (2 Cal. Jur. 173, 174.)

The judgment is affirmed.

Sturtevant, J., and Nourse, J., concurred

A petition by appellant and defendants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 27, 1928.

All the Justices concurred.