**HARMS, Inc., a corporation, Plaintiff,**

v.

**TOPS MUSIC ENTERPRISES, INC., OF CALIFORNIA, a corporation, Carl Doshay, Defendants.**

No. 1255-57.

United States District Court
S. D. California,
Central Division.
March 13, 1958.

Fink, Levinthal & Lavery, by Arthur Katz, Los Angeles, Cal., for plaintiff.

Jerry Rolston, Jerry K. Fields, Beverly Hills, Cal., for defendants.

YANKWICH, Chief Judge.

This is one of several actions instituted by Harms, Inc., a New York corporation, which is the owner of copyrights to musical compositions against various defendants, California individuals and corporations, who are alleged to have infringed their copyrights,[1] by reproducing songs on records without the payment of a license fee and without authorization.[2]

In the case before us, the particular musical composition is known as "You and the Night and the Music", the authors of which are Howard Dietz and Arthur Schwartz, who have transferred their rights to the plaintiff. The song was published on November 22, 1934, and registered on November 23, 1934.

The complaint states two claims or causes of action, one seeking injunctive relief and damages for infringement of the copyright, and the other seeking injunctive relief and additional and punitive damages for unfair competition, based on diversity under California state law, and for violation of the Lanham Trademark Act.[3]

In substance, it is alleged in the second cause of action that the act of selling inferior recordings of the music without the supervision and control of the plaintiff tends to detract from the great reputation of the writers of the song and the plaintiffs as the owner of the copyright.

Additional allegations will be referred to in the discussion to follow.

The defendants have moved to dismiss the entire complaint, or, in the alternative, to strike certain portions of it upon the ground that neither of the counts states a claim upon which relief can be granted.[4]

■ The attack on the first cause of action for copyright infringement need not detain us. We are satisfied that this count sufficiently avers ownership of copyright and infringement by the defendants as required by the statute and fulfills the requirements as to the statement of a claim obtaining in this circuit.[5]

As to the second cause of action, lack of jurisdiction is pleaded.[6]

■■ We need not concern ourselves with minor contentions such as that the plaintiff has not complied with California law for doing business in the State of California.[7] For, conceding that the certificate on file shows non-compliance, plaintiff's right to sue being federal,[8] it is not governed by state law. The plaintiff may sue in the jurisdiction where the defendant is found.[9] And

1. 17 U.S.C.A. § 1 et seq.

2. 17 U.S.C.A. §§ 1(e), 101(e).

3. 15 U.S.C.A. §§ 1121, 1125, 1126(b) (h) and (i).

4. Rule 12(b) (6), Federal Rules of Civil Procedure, 28 U.S.C.A.

5. 17 U.S.C.A. § 101; Form 17, Appendix Federal Rules of Civil Procedure, 28 U.S.

C.A.; See, Sidebotham v. Robison, 9 Cir., 1955, 216 F.2d 816, 826, 830–831.

6. Rule 12(b) (1), (2), Federal Rules of Civil Procedure.

7. California Corporations Code, §§ 6400–6410, 6801.

8. 28 U.S.C.A. § 1338(a) and (b), 15 U.S.C.A. § 1121.

9. 28 U.S.C.A. § 1391(b) and (c) ; § 1400.

granted that in a diversity case, we would be governed by state law,[10] the questions involved in this case arise under federal law, and the State is powerless to determine the conditions under which a corporation, in a *non-diversity case*, or in a pendent action, may sue in federal courts.[11]

More basic is the question whether a claim either under the Lanham Trademark Act or unfair competition under California law is stated in the second cause of action.

## I

## COPYRIGHT AND UNFAIR COMPETITION

Concededly, it is the law of this circuit that the acts of unfair competition which are within the purview of the Lanham Trademark Act [12] must have occurred in or affect interstate commerce.[13] Under the general concept of unfair competition, relief can be granted for the misuse, truncation or distortion of the literary property of another,[14] or even the title to one's work.[15] Under these cases, while "mere dilution" of value of literary property will not be protected absent a statute, such as Section 361, subd. 1, of the New York General Business Law, McKinney's Consol. Laws, c. 20, enacted in 1954, protection will be afforded for specific injuries to literary

rights in works which may not be protected by copyright. Where a song is copyrighted under a name, it cannot be dissociated from it. He who pirates it, pirates it as a whole. While protection may be afforded to the appropriation of a title as unfair competition,[16] an owner of a *copyrighted* song who sues in one claim for the full measure of recovery allowed by the copyright law, will not be allowed to recover in another claim for unauthorized use of the title. The reason was stated by the Court of Appeals for the Second Circuit:

"There is no claim here that Krug or the appellees meant to, or that their labeling did in fact, mislead the public as to the musical content of the records. *If the appellants' titles were used, it was because their songs were used.* Absent the Copyright Law, this would be proper. National Comics Publication v. Fawcett Publications, 2 Cir., 191 F.2d 594. Titles are protected only to the extent necessary to prevent confusion on the part of the public as to the identity of the composition covered by the title. Warner Bros. Pictures, Inc., v. Majestic Pictures Corp., 2 Cir., 70 F.2d 310, 312. Where, as here, there is no confusion and no deception, protection is denied."[17] (Emphasis added.)

10. Woods v. Interstate Realty Co., 1949, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524.

11. Erie Ry. Co. v. Tompkins, 1938, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188; Woods v. Interstate Realty Co., supra, Note 10, 337 U.S. at pages 538–539, 69 S.Ct. at pages 1237–1238.

12. 15 U.S.C.A. § 1125.

13. Stauffer v. Exley, 9 Cir., 1950, 184 F.2d 962; Chamberlain v. Columbia Pictures, 9 Cir., 1951, 186 F.2d 923; Pagliero v. Wallace China Co., 9 Cir., 198 F. 2d 339.

14. See, Strauss: The Moral Right of the Author, 1955, 4 The American Journal of Comparative Law, 506, 521–529; Yankwich: Unfair Competition as an Aid to Equity in Patent, Copyright and

Trademark Cases, 1957, 52 Notre Dame Lawyer, pp. 438, 456 et seq. And see, Paramore v. Mack Sennett, Inc., D.C. Cal.1925, 9 F.2d 66; Warner Bros. Pictures v. Majestic Pictures, 2 Cir., 1934, 70 F.2d 310; Paramount Pictures v. Leader Press, 10 Cir., 1939, 106 F.2d 229; Becker v. Loew's, Inc., 7 Cir., 1943, 133 F.2d 889.

15. Jackson v. Universal International Pictures, Inc., 1950, 36 Cal.2d 116, 222 P.2d 433; Chamberlain v. Columbia Pictures, 9 Cir., 1951, 186 F.2d 923; Johnson v. Twentieth-Century Fox Film Corp., 1947, 82 Cal.App.2d 796, 810–818, 187 P.2d 474.

16. Shapiro, Bernstein & Co. v. Goody, 2 Cir., 1957, 248 F.2d 260, 267–268.

17. Shapiro, Bernstein & Co. v. Goody, supra, Note 16, 248 F.2d at page 268.

■■ In the case before us, the use of the title was incidental to the use of the song. Granted that, at times, especially in cases involving trademarks, the facts which prove infringement may also prove unfair competition,[18] in the realm of copyright, the title cannot be dissociated from the song and the claim be made that it having been associated with the author, there can be recovery for both infringement of the copyright and unfair competition.[19] The cause of action is one,—namely, violation of the copyright through unauthorized and unlicensed recording. It cannot be split into two causes of action with separate demands for relief under each. This the plaintiff has done. For, stripped of superfluous general verbiage, it is alleged, in substance, in the second cause of action, that, under licensing, the plaintiff would have control over the method and technique of recording. Deprivation of this right cannot be turned into a separate tort, *if permission to record exists, or license fee is tendered.*[20]

In reality, the second cause of action segmentizes the sole cause of action for infringement which the plaintiff admittedly has, by seeking *added relief*, without additional facts.[21]

18. Looz, Inc. v. Ormont, D.C.Cal.1953, 114 F.Supp. 211, 216; Silvers v. Russell, D.C.Cal.1953, 113 F.Supp. 119, 125–126; Mershon Co. v. Pachmayr, 9 Cir., 1955, 220 F.2d 879, 883–884.

19. See, Chamberlain v. Columbia Pictures, 9 Cir., 1951, 186 F.2d 923, 925.

20. Hurn v. Oursler, 1933, 289 U.S. 238, 246–247, 53 S.Ct. 586, 77 L.Ed. 1148; Warner Bros. Pictures v. Columbia Broadcasting Co., 9 Cir., 1954, 216 F.2d 945, 951–952.

21. In the second cause of action, the plaintiff incorporates the first fifteen allegations of the first cause of action relating to infringement, and then alleges, in amplified form, the same acts of unauthorized appropriation of copyrighted material as unfair competition, by elaborating the means whereby the claimed added injury is caused. However, in the last analysis, what they seek is full recovery from the defendants for copyright infringement by appropriating and recording and selling the song, and added relief for the same acts as a distinct tort. The gist of the added allegations is contained in Paragraph II of the second cause of action, which reads:

"Prior to November 22, 1934, plaintiff acquired from Howard Dietz and Arthur Schwartz, the co-authors of 'You and the Night and the Music' the exclusive right to use, and to license the use, of the title 'You and the Night and the Music' solely in connection with authorized uses of said co-authors' musical composition. Said co-authors did further convey to plaintiff prior to November 22, 1934, the exclusive right to use, and to license the use, of their respective names, and the good will associated therewith in connection with authorized uses of their musical composition. Plaintiff has paid, and is now paying valuable consideration to said co-authors for the right to exclusively exploit the rights herein granted.

"Howard Dietz and Arthur Schwartz are highly successful and respected songwriters. They have created for themselves an enviable reputation. Both the buying public and the music industry recognize the commercial value of fine reputations in the exploitation of music—for such reputations help 'sell music'; thus, a music publisher is more readily induced to publish a new composition by a writer of established reputation than he is to publish a new composition by an unestablished writer. So, too, a record buyer is more readily induced to purchase one newly recorded composition over another by reason of the fact that he, the customer, is aware of the fine reputation of the writer of one composition, but has never heard of the writer of the other. Howard Dietz and Arthur Schwartz have a valuable property right in the use of their respective names. Plaintiff has expended substantial sums to acquire the exclusive right to use and exploit the names of said writers in connection with the authorized use of their musical composition 'You and the Night and the Music' and has expended substantial sums in using and exploiting said writers' names.

"By reason of the widespread and continued success of the musical composition 'You and the Night and the Music' over a period in excess of two decades, the title of said musical composition has become associated in the public mind with a quality product and such title has thereby developed considerable commercial value.

"Without license and authorization from plaintiff, defendant Tops, at the instigation of defendant Doshay, and under his direction and control and with his active participation, has used, and is

Reference has already been made to the instances in which courts will protect the integrity of a man's intellectual work.

█ To particularize: Courts will protect against (a) the omission of the author's name unless, by contract, the right is given to the publisher to do so,[22] or (b) false attribution of authorship,[23] (c) infringement of originality of arrangement or recording of a song,[24] as well as for (d) distortion or truncation of work as to text or content.[25]

█ There is not in the second cause of action in the complaint before us any allegation that the defendants, in making the recording, have been guilty of any of these or similar acts. The mere allegation that the lack of control on the part of the plaintiff over the recording, by resulting in inferior recording, might injure the reputation of the author and the plaintiff, is insufficient to bring it within the purview of the rule of unfair competition declared in the cases.[26] Absent allegations of misrepresentation or deception on the public, there can be no recovery for unfair competition.

As stated in a well known case:

"The invocation of equity rests more vitally upon the unfairness. If B. represents that his goods are made by A., and if damage therefrom to A., is to be seen, we are aware of no consideration which makes it controlling whether this damage to A. will come from market competition with some article which A. is then manufacturing or will come in some other way. The injury to A. is present, and the fraud upon the consumer is present; nothing else is needed." [27]

A more recent case decided by the Court of Appeals for the Second Circuit has a very important bearing upon the facts before us. That case [28] involved the photographic reproduction, with interpolations and sale of an Italian Libretto based on Shakespeare's "Falstaff", and the vocal and piano score of Verdi's music upon which the copyright had expired. *Finding no simulation or imitation or any other element of deceptive representation,* the Court sustained a lower court ruling which declined to grant relief on the ground of unfair competition, saying:

"We do not mean that the defendant could under no circumstances be guilty of 'unfair competition' in his use of the 'work'; *but it would have*

now using plaintiff's aforesaid copyrighted musical composition in phonograph records and has affixed, or caused to be affixed, to the labels of each of said phonograph records the title of said musical composition, and the names of the writers thereof, and has distributed and sold many thousands of said phonograph records in intrastate commerce and in commerce regulated by the Congress of the United States, and elsewhere, all for the purpose of turning to said defendants' own account and profit the considerable commercial value of the title and of the names of the writers of said musical composition, and all without compensation to the plaintiff, and to its detriment. The aforesaid acts of said defendants and each of them, constitute unfair trade practices and unfair competition against plaintiff, and if permitted to continue, will cause plaintiff grave and irreparable injury and damage."

22. Clemens v. Press Publishing Co., 1910, 67 Misc. 183, 122 N.Y.S. 206; Clemens v.

Belford, Clark & Co., C.C.Ill.1883, 14 F. 728; and see, Vargas v. Esquire, Inc., 7 Cir., 1947, 164 F.2d 522.

23. D'Altomonte v. New York Herald Co., 1913, 208 N.Y. 596, 102 N.E. 1101.

24. R. C. A. Mfg. Co. v. Whiteman, 2 Cir., 1940, 114 F.2d 86, 89, 90.

25. Drummond v. Altemus, C.C.Pa.1894, 60 F. 338, 339; De Bekker v. Frederick A. Stokes, 1916, 168 App.Div. 452, 153 N.Y. S. 1066; Manners v. Famous Players-Lasky Corp., D.C.N.Y.1919, 262 F. 811; Manners v. Morosco, 1920, 252 U.S. 317, 40 S.Ct. 335, 64 L.Ed. 590; Curwood v. Affiliated Distributors, D.C.N.Y.1922, 283 F. 219; Granz v. Harris, 2 Cir., 1952, 198 F.2d 585.

26. Prouty v. National Broadcasting Co., D.C.Mass.1939, 26 F.Supp. 265, 266.

27. Vogue Co. v. Thompson-Hudson Co., 6 Cir., 1924, 300 F. 509, 512.

28. G. Ricordi & Co. v. Haendler, 2 Cir., 1952, 194 F.2d 914.

*to be by some conduct other than copying it.* Since he confined himself to that. and gave notice that it was his product, the Copyright Act protected him." [29]

While the Court there was dealing with material on which the copyright had expired, the ruling applies with greater strength to copyrighted material, because in such case, there would be more cogent reason for denying relief merely upon facts involving copyright infringement. Otherwise, we would allow a person, upon the basis of facts which constitute no more than copyright infringement, a double recovery. So it follows that, whether the Lanham Trademark Act [30] does or does not establish a federal action for unfair competition,[31] and if it does, whether it applies to copyrighted materials, the fact is that the second cause of action alleges no facts which constitute the type of distortion, simulation or attack upon the integrity of a work in the realm of literary property for which the courts have granted

29. G. Ricordi & Co. v. Haendler, supra, Note 28, 194 F.2d at page 916. In a recent New York case, Palmieri, District Judge, has summed up the principle, expressed in many New York State cases, that unfair competition must consist of *more than appropriation of the copyrighted literary property of another:*

"In all of these cases the holding is partly based on the theory that one cannot appropriate the property of another. However, *it is clear that fair competition will not be found on merely this circumstance.* The preceding cases contained *features of deception—the appropriator seeking to capitalize as well on the reputation of the aggrieved original sponsor of the product or service.* Moreover, the decisions also are based partly on interferences with *contractual relations affecting exclusive rights to intangibles.* Thus, in Metropolitan Opera Ass'n, Inc., v. Wagner-Nichols Recorder Corp. [199 Misc. 786, 101 N.Y.S. 2d 483], one who recorded and sold the radio broadcasts of 'live' Metropolitan opera performances was enjoined from continuing this activity. The court based its conclusion on appropriation of another's effort, *on the public being deceived as to the quality of the recorded performances, and on the resulting interference with the Metropolitan Opera Association's contracts with radio broadcasting and recording companies.* The same elements were present in Dior v. Milton [Sup., 155 N.Y.S.2d 443]. *When only appropriation of another's efforts is involved, and the other elements are not present, the New York courts refuse to find unfair competition."* Continental Casualty Co. v. Beardsley, D.C.N.Y.1957, 151 F.Supp. 28, 44. (Emphasis added.)

This statement is very revealing, because New York courts, as appears from the preceding discussion, have been very liberal in protecting literary rights under the concept of unfair competition, practically creating an "action on the case" to reach individual wrongs done to authors. Added illustrations of protection against improper attribution, distortion or truncation of literary work are found in Estes v. Williams, C.C.N.Y. 1884, 21 F. 189; Fisher v. Star Co., 1921, 231 N.Y. 414, 132 N.E. 133, 137, 19 A.L.R. 937; Packard v. Fox Film Corp., 1923, 207 App.Div. 311, 202 N.Y.S. 164; Ben-Oliel v. Press Publishing Co., 1929, 251 N.Y. 250, 167 N.E. 432, 434; Avon Periodicals Co. v. Ziff-Davis Publishing Co., 1953, 282 App.Div. 200, 122 N.Y.S. 2d 92.

The controlling question in the determination of these cases is "whether the acts complained of are fair or unfair". Fisher v. Star Co., supra. Cases decided under California law are in accord with this principle. See, Chaplin v. Amador, 1928, 93 Cal.App. 358, 269 P. 544; Jones v. Republic Productions, 9 Cir., 1940, 112 F.2d 672. An element of deception or unfairness must be present. It is not present if there is only appropriation, which can be protected under copyright law. See, McCord Co. v. Plotnick, 1951, 108 Cal.App.2d 392, 239 P.2d 32; Netterville, California Law of Unfair Competition, 1955, 28 So.Cal. Law Rev., pp. 240, 259–268.

30. 15 U.S.C.A. §§ 1051–1127.

31. Stauffer v. Exley, 9 Cir., 1950, 184 F. 2d 962; Chamberlain v. Columbia Pictures Corp., 9 Cir., 1951, 186 F.2d 923; Steele v. Bulova Watch Co., 1952, 344 U.S. 280, 282–284, 73 S.Ct. 252, 97 L.Ed. 252; Federal Trade Commission v. Motion Picture Advertising Co., 1953, 344 U.S. 392, 394–395, 73 S.Ct. 361, 97 L.Ed. 426; Ross-Whitney Corp. v. Smith, Kline & French Laboratories, 9 Cir., 1953, 207 F.2d 190; L'Aiglon Apparel v. Lana· Lobell, 1954, 3 Cir., 214 F.2d 649.

relief, either under State [32] or federal law.[33]

So the conclusion is inescapable that the second cause of action, in its present form, cannot stand.

## II
## ADMISSION OF LIABILITY

The ruling on the motions to dismiss may call for an amended complaint which may require the filing of new responsive pleadings by the defendants. However, because what is done in this case will be the pattern to follow in the other pending cases, it is imperative to rule on the two motions of the plaintiff for partial judgment, as to the first cause of action under Rule 54(b), Federal Rules of Civil Procedure, and for summary judgment under Rule 56(a) and (c), Federal Rules of Civil Procedure. The defendants, in their moving papers on the motions to dismiss and in affidavits and documents attached to the motions and to their opposition to the motions for summary judgment, admit that they have recorded this song without specific authorization and claim that by reason of the plaintiff's dealings with them they have acquired the status of compulsory licensee, or licensee by estoppel. After the institution of this action the defendants proffered $30,000 in royalties, which *was not* accepted. These admissions and other undisputed facts which appear in the plaintiff's affidavits show the publication without authorization which establishes liability under the Copyright Act.[34] The (a) claimed filing by the defendants of a notice of intention to use, ineffective though it may be, because not directed to the plaintiff,[35] and (b) the proffering of payments, establish (1) the title of the plaintiff to the song, (2) liability for prior unauthorized use,

and (3) indebtedness for license fee, at least to the amount proffered.

This being the situation, the question of liability stands admitted and the plaintiff is entitled to a partial summary judgment on that question, leaving for determination at the trial only the scope of the relief to be granted against the defendants for the admitted unauthorized use, recording and sale of the copyrighted song.

Although reaching this conclusion we cannot grant, at the same time, the partial final judgment which the plaintiff seeks under Rule 54(b), Federal Rules of Civil Procedure, which provides for a judgment upon one of several multiple claims and the means of finalizing it so as to make it appealable without waiting for the determination of the other claims. The Section was intended to enable the Court, after trial of a case involving multiple claims and determining one which is independent of the others,—to enter a final appealable judgment. In this manner, persons affected by the particular claim need not wait until the *final judgment* on the other claims before questioning the correctness of the adjudication of the partial claim. It was not the object of this section to depart from the fundamental principle obtaining in federal procedure against *splitting a claim*, and *determining its piecemeal*. The Advisory Committee in its Notes so stated:

"The historic rule in the federal courts has always prohibited piecemeal disposal of litigation and permitted appeals only from final judgments except in those special instances covered by statute. * * * Rule 54(b) was originally adopted in view of the wide scope and possible content of the newly created 'civil

---

32. California Civil Code, § 3369(3); California Business and Professions Code, §§ 14400–14403; see, Netterville, California Law of Unfair Competition, 1955, 28 So.Cal.Law Rev. pp. 240, 259–268.

33. Lanham Trademark Act, §§ 1, 2, 44(h) and (i); 15 U.S.C.A. §§ 1051, 1052, 1126 (h) and (i); 28 U.S.C.A. § 1338(b).

34. 17 U.S.C.A. § 101(e); G. Ricordi & Co. v. Columbia Graphophone Co., 2 Cir., 1920, 263 F. 354.

35. 17 U.S.C.A. § 101(e).

action' in order to avoid the possible injustice of a delay on judgment of a distinctly separate claim to await adjudication of the entire case. It was not designed to overturn the settled federal rule stated above, which, indeed, has more recently been reiterated in Catlin v. United States, 1945, 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911." [36]

The Courts which have had occasion to interpret the section, have construed it in this manner. Thus in a case in the Seventh Circuit [37] the complaint recited certain items including some checks of the defendant as elements of the claim to be recovered. The Court granted a partial judgment as to the admitted claim. Reversing the lower court, which had so held, the Court said:

"Rule 54(b) provides for a final judgment upon one claim in a suit which is predicated upon more than one claim. The holding in the Reeves case that the judgment entered upon one of the claims in suit was final and appealable is plainly based upon the premise that such claim was 'entirely distinct' from other claims sued upon. Defendant, recognizing the rationale of this decision, seeks its application here by arguing that plaintiff's cause of action is predicated upon separate and distinct claims. Specifically, it argues that the checks referred to in plaintiff's complaint, upon which the judgment in question rests, constitute separate and distinct claims. This contention in our view is clearly erroneous. The claim sought to be enforced is for services rendered by plaintiff to the defendant during a stated period of time.

The cause of action is based upon a single claim. The fact that the complaint designated certain items, including the checks, as elements of the claim sought to be recovered is not inconsistent with this conclusion. Whether proper pleading required their designation is now immaterial. In any event, such items were of an evidentiary nature and in fact and reality were mere elements upon which the single claim was predicated.

"Such being the situation, defendant's contention that Rule 54(b) is applicable must be rejected. Plaintiff's contention that the judgment is not final because entered under Rule 56 requires not only an interpretation of such rule but an ascertainment as to whether the judgment was entered in conformity with the rule or in derogation thereof. We observe in the beginning and will attempt to show that this rule, in our opinion, does not contemplate a summary judgment for a portion of a single claim in suit. Neither does any other rule of the Rules of Civil Procedure so contemplate, as far as we are aware. A partial summary judgment, as the instant one is termed, under the circumstances before us is a misnomer." [38]

In another case,[39] which was an action for royalties due under a license agreement, the trial Court entered a judgment for the defendant. On appeal, the Court of Appeals held that by reason of the Royalty Adjustment Act of 1942,[40] the Court of Claims had exclusive jurisdiction. To the argument that the plaintiff was entitled to a partial judgment

36. 28 U.S.C.A., Rule 54, p. 118. The Court of Appeals for the Ninth Circuit has adopted the view expressed by the Advisory Committee as to the meaning of this provision. See, Wynn v. Reconstruction Finance Corporation, 9 Cir., 1954, 212 F.2d 953, 955–956; Walter W. Johnson Co. v. Reconstruction Finance Corp., 9 Cir., 1955, 223 F.2d 101, 102.

37. Biggins v. Oltmer Iron Works, 1946, 154 F.2d 214, 216.

38. Biggins v. Oltmer Iron Works, supra, Note 37, 154 F.2d at page 216.

39. Coffman v. Federal Laboratories, D.C. Pa.1947, 73 F.Supp. 409.

40. Section 1 et seq.; 35 U.S.C.A. § 89 et seq.

for the royalties *admitted by the Answer to be due*, the Court's answer was:

"Rule 54(b) provides for a final judgment upon one claim in a suit predicated upon two or more claims. It is clear, however, that there must be differing occurrences or transactions which form the bases of separate units of judicial action before such a judgment can be entered under that Rule. They are not found here. The plaintiff's claim is for royalties alleged to be due him up to the dates set forth in his bill of complaint. The fact that this claim was divided into several parts in the findings of fact, to determine the impact of the Act and orders thereunder on various segments of it, does not make what is essentially a single claim into several claims arising out of wholly separate and distinct transactions or engagements. The claim, moreover, of which enforcement was being sought, was one for 6% royalties on a particular contract and at most only half of that amount was undisputed. Since the part does not become a separate cause of action a judgment could not be entered under Rule 54(b)." [41]

 In the case before us, the partial judgment under Rule 54(b) determining liability *would establish nothing with finality*. For infringement cannot be dissociated from the relief by way of injunction or damages provided by the Copyright Law. To establish liability under Rule 54(b) would result in a judgment from which an appeal would have to be taken to protect the defendants' rights. This would force the defendant to litigate *piecemeal* the merits of this case. [42]

 By granting summary judgment declaring that liability has been admitted and leaving the remedies by way of injunction, accounting and the like to be determined later, we merely crystallize and reduce the issues. The finding of liability will abide the final determination of the relief to be granted after full trial, when the matters decided will be merged in one final judgment from which an appeal will lie. [43]

For the reasons just stated the Court enters the following orders on the motions heretofore heard and submitted:

1. (a) The defendants' motion to dismiss is denied as to the first cause of action of the plaintiff's complaint, but is granted as to the second cause of action, with leave for the plaintiff to amend, if so advised, within 20 days after receipt of the Clerk's notice of this decision; (b) the alternative motions of the defendant to strike portions of the first and second causes of action are denied.

2. Plaintiff's motion for partial final judgment under Rule 54(b), Federal Rules of Civil Procedure is denied.

3. Plaintiff's motion for partial summary judgment on the question of liability under Rule 56(a) and (c), Federal Rules of Civil Procedure, is granted. Formal findings granting such partial summary judgment and judgment to be prepared by counsel for the plaintiff under local Rule 3(d) (2).

---

41. Coffman v. Federal Laboratories, 3 Cir., 1948, 171 F.2d 94, 96–97.

42. Catlin v. United States, 1945, 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911; Baltimore Contractors v. Bodinger, 1955, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233; Wynn v. Reconstruction Finance Co., 9 Cir., 1954, 212 F.2d 953, 955.

43. Rule 54(a); 28 U.S.C.A. § 1291.