Helen D. Miller, Individually and as Executrix of Alton G. Miller, Respondent, *v.* Universal Pictures Company, Inc., et al., Appellants.

First Department, June 14, 1960.

*Henry Cohen* of counsel (*Robert J. Feldman* and *Edgar M. Rubin* with him on the brief; *Cohen & Sandomire*, attorneys for Decca Records, Inc., and *Adolph Schimel*, attorney for Universal Pictures Company, Inc.), for appellants.

*Jesse Climenko* of counsel (*Herbert L. Scharf* with him on the brief; *David Mackay*, attorney), for respondent.

*Per Curiam.* Defendants Universal Pictures and Decca Records appeal from an interlocutory judgment directing a reference. The Referee is to take an accounting as to plaintiff's damages and defendants' profits resulting from the release by Decca Records of phonograph records made from the sound track of a motion picture entitled '' The Glenn Miller Story '' which was produced by Universal Pictures.

Glenn Miller in his lifetime had been a very successful and original band leader with a large following. Plaintiff is Glenn Miller's widow and the executrix of his estate. As such, she receives substantial royalties on recordings made by Radio Corporation of America of original Glenn Miller renditions.

In 1952 she entered into an agreement under which she granted Universal Pictures the right to portray her and her family in the photoplay. In addition, she purported to grant, among other things, the right to '' simulate the style, manner and manner of playing '' of Glenn Miller and his orchestra. She also agreed to co-operate in making available all information and material, whether written, musical or otherwise, that she might have relating to Glenn Miller and his life and activities. In return, she was to receive a percentage of the gross proceeds of the photoplay. The gross proceeds, as defined by the agreement, included such items as the net amounts received by Universal Pictures from the licensing for television or radio of any musical material upon which the photoplay is based. No reference is made in the agreement to possible revenue from recordings made from the sound track. Nor is there a provision authorizing Universal Pictures to make recordings, directly or indirectly, from the sound track.

In making the sound track for the photoplay, Universal Pictures did not use the original RCA recordings of the Glenn Miller orchestra. Instead, through its own orchestra, it meticulously imitated the original Glenn Miller renditions.

After the photoplay was produced, and purportedly as part of its promotion campaign, Universal Pictures granted Decca Records the right to make recordings from the sound track. Universal Pictures is owned and controlled by Decca Records. Decca Records paid nothing to Universal Pictures for this right and has received substantial profits from the recordings.

After a trial, it was concluded that Decca Records had wrongfully profited from misappropriating plaintiff's property. It was also found that Universal Pictures had breached an implied obligation of the agreement it had made with plaintiff not to make recordings from the sound track.

Plaintiff never had, and certainly does not now have, any property interests in the Glenn Miller "sound". Indeed, in the absence of palming off or confusion, even while Glenn Miller was alive, others might have meticulously duplicated or imitated his renditions (cf. *Supreme Records* v. *Decca Records*, 90 F. Supp. 904, 906-907 [S. D. Cal.]; *Chaplin* v. *Amador*, 93 Cal. App. 358, 362; Kaplan, Performer's Right and Copyright: The Capitol Records Case, 69 Harv. L. R. 409, n. 66, p. 427). The authorities relied on by plaintiffs are distinguishable because in those cases the offending parties did not provide their own performances (e.g.: *Metropolitan Opera Assn.* v. *Wagner-Nichols Recorder Corp.*, 199 Misc. 786, affd. 279 App. Div. 632; *Gieseking* v. *Urania Records*, 17 Misc 2d 1034; *Capitol Records* v. *Mercury Records Corp.*, 221 F. 2d 657, 663 [2d Cir.]).

Nor under the circumstances here present should a negative covenant be implied, namely, that Universal would not so use the sound track as to compete with the royalty-yielding license granted to RCA. In the field of the performing arts there are cases where the courts have found an implied covenant by the licensee not to use, or a limitation on the right to use, the material licensed in a manner not originally contemplated by the parties and which would deprive the licensor of benefits otherwise available (*Kirke La Shelle Co.* v. *Armstrong Co.*, 263 N. Y. 79; *Ettore* v. *Philco Tel. Broadcasting Corp.*, 229 F. 2d 481, 487-488, 490-491, cert. denied 351 U. S. 926). Here, however, Universal Pictures made the sound track under copyright licenses which plaintiff neither controlled nor granted. Plaintiff, as noted, had no protectible interest as such in the Glenn Miller sound, and the recording of motion picture sound tracks for commercial purposes did not involve a new medium

of entertainment. The RCA license agreement was in existence and known to all parties at the time the contract between plaintiff and Universal Pictures was made, and if plaintiff wished to restrict Universal Pictures in the use of its sound track, she should have expressly so provided in the agreement. Hence, under the theory of the complaint, there is no occasion to consider whether, within the meaning of the contract, the recordings were merely in exploitation of the motion picture as urged by defendants.

However, while Universal Pictures was the owner of the film, including its sound track, it is also true that plaintiff was entitled to royalties on the income from the film, of which its sound track was a part. Thus, it is arguable that when Universal Pictures parted with the sound track it was, in effect, parting with a portion of the film. It is arguable then, too, that Universal Pictures could only do this within the terms of the contract and subject to plaintiff's right to royalties on the proceeds of the sound track. Because the sound track was transferred to its affiliate corporation, the transfer was not the result of an arm's length deal. Hence, the transfer may be subject to attack on the ground that, if made without adequate consideration, Universal Pictures was indirectly undermining the base upon which royalties were to be computed. In other words, if Universal Pictures itself had made and sold recordings from the sound track, and if under the contract it would have been obliged to pay royalties to plaintiff on such recordings, then plaintiff may have a remedy which thus far she has not sought.

On the aspects last discussed this court should not now pass, because there is involved a theory not urged by plaintiff, and one that defendants did not have an opportunity to meet (see *Wells* v. *Fisher*, 237 N. Y. 79, 84). But, in the interests of justice, a new trial is justified, as is an opportunity to plaintiff to amend her pleadings if she is so advised.

Accordingly, the interlocutory judgment in favor of plaintiff-respondent should be reversed, on the law and the facts, and, in the exercise of discretion, a new trial granted, with costs to defendants-appellants.

BREITEL, J. P., VALENTE, McNALLY and STEVENS, JJ., concur; M. M. FRANK, J., deceased.

Interlocutory judgment reversed, on the law and on the facts, and, in the exercise of discretion, a new trial granted, with costs to defendants-appellants.